645 F.Supp. 596 (1986)
TAYLOR-MORLEY-SIMON, INC., Plaintiff,
v.
MICHIGAN MUTUAL INSURANCE CO., Defendant.
No. 85-1799C(3).
United States District Court, E.D. Missouri.
September 23, 1986.
Gerald A. Rimmel, David T. Weir, Susman, Schermer, Rimmel & Parker, St. Louis, Mo., for plaintiff.
Sam P. Rynearson, Evans & Dixon, St. Louis, Mo., for defendant.

*597 MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court to determine the merits of plaintiff's claim after a one-day nonjury trial.
In general, plaintiff brings this action seeking a declaration that, pursuant to an insurance policy issued by defendant, (a) defendant must defend and indemnify plaintiff in a state court lawsuit; (b) defendant is liable for plaintiff's attorneys' fees expended in defense of that lawsuit to the date of this declaratory judgment; and (c) defendant is liable for plaintiff's attorneys' fees in this action. Plaintiff also asserts that based on representations of an agent of defendant, defendant is now estopped to deny plaintiff coverage under the insurance policy. Defendant contends exclusions of the policy preclude defendant's liability.
Having carefully considered the pleadings, testimony, stipulations, evidence, and the entire record herein, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff, Taylor-Morley-Simon, Inc., is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business in the County of St. Louis, Missouri. Plaintiff is engaged in the construction business, including the construction of homes.
2. Defendant, Michigan Mutual Insurance Company, now known as Amerisure Companies, is a Michigan corporation with its principal place of business located in Michigan. Defendant is authorized to transact the business of selling insurance in the State of Missouri.
3. Associated General Insurance Company, one of defendant's insurance companies, issued a special multi-peril insurance policy, no. SAM G 86-0-C4619-2, to Taylor-Morley-Simon, Inc. The policy was in effect at all relevant times and provides $100,000 per occurrence (or $200,000 aggregate) property damage liability coverage.
4. The comprehensive general liability insurance portion of the policy provides that:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury or
property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
(emphasis contained in policy through boldface type).
5. The policy explicitly defines "occurrence" and "property damage" as follows:
"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

* * * * * *
"Property Damage" means (1) physical damage to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
(emphasis contained in policy through boldface type).
6. Section 1 of the policy explicitly excludes from comprehensive general liability insurance coverage:

*598 (a) ... liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
* * * * * *
(1) ... property damage to premises alienated by the named insured arising out of such premises or any part thereof; (m) ... loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured; and (n) ... property damage to the named insured's products arising out of such products or any part of such products.
(emphasis contained in policy through boldface type).
Section VI(A)(3) of the broad form comprehensive general liability endorsement to the policy further excludes from coverage:
... property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.
(emphasis contained in policy through boldface type).
7. In 1980, Taylor-Morley-Simon, Inc., and Douglas K. McSherry and Bonnie J. McSherry entered into an agreement whereby the McSherrys would purchase, and Taylor-Morley-Simon would sell, certain real estate located at and known as 13941 Ladue Farm Road in St. Louis County, Missouri, with a home constructed thereon by Taylor-Morley-Simon, Inc. Thereafter, pursuant to a contract of sale and amendments thereto, Taylor-Morley-Simon conveyed the real estate and residence thereon to the McSherrys for good and sufficient consideration, and the McSherrys took possession thereof.
8. Approximately two years after the McSherrys took possession of the residence, they discovered that the concrete slab which supported a portion of their residence was sinking, allegedly because the slab was not supported by piers and the subsoil under the slab was not properly compacted. Because of the settling slab, the McSherrys asserted the walls and ceilings of the house started to crack, the hot and cold water lines and gas lines under the slab had become stressed, and the heating and air-conditioning ducts had torn loose, leaving minimal heat in part of the house. Further, the McSherrys noted the sewer line was unsupported. The McSherrys also claimed violation of the St. Louis County building codes in that (a) the natural gas line installed under the existing slab was not properly protected by conduits and proper venting; and (b) the heating ducts under the floor were not encased in two inches of concrete.
9. In 1983, when Taylor-Morley-Simon refused to correct these alleged defects to the McSherrys' satisfaction, the McSherrys filed suit against Taylor-Morley-Simon in the Circuit Court of St. Louis County, Missouri, styled Douglas K. McSherry and Bonnie J. McSherry v. Taylor-Morley-Simon, Inc., cause no. 493188, and which is still pending there. In their state court petition, the McSherrys attempt to recover against Taylor-Morley-Simon, Inc., on theories of breach of implied warranty (Count I); breach of express warranty (Count II); breach of contract (Count III); and negligent construction of the house, in violation *599 of the St. Louis County building code (Count IV). Due to the alleged cracking, settling, and shifting of the home's walls, floors, and foundation, the McSherrys seek cancellation of the contract with Taylor-Morley-Simon, $150,000 in actual damages, interest, attorneys' fees, costs, and on Count IV only, punitive damages in the sum of $500,000.
10. Prior to the filing of the lawsuit, Taylor-Morley-Simon, Inc., placed its insurer on notice of a potential claim by the McSherrys against it.
11. After the filing of the McSherry state court lawsuit, Taylor-Morley-Simon, through its attorneys, formally requested Michigan Mutual Insurance Company to arrange for defense of Taylor-Morley-Simon and to indemnify it against the claims raised in the litigation.
12. In order to provide all relevant information to Michigan Mutual Insurance Company regarding the basis of the McSherrys' claim, a meeting was held at Taylor-Morley-Simon's corporate headquarters in early February of 1984.
13. At that meeting, a discussion occurred between an agent of Michigan Mutual Insurance Company and an agent of Taylor-Morley-Simon, Inc., as to whether or not the McSherrys' claim would be covered under the terms of the comprehensive general liability policy. The evidence is conflicting as to whether defendant's claims adjuster at the meeting told Taylor-Morley-Simon it was covered under the policy.
14. Subsequent to that meeting in February of 1984, Michigan Mutual Insurance Company took no affirmative action to defend and indemnify Taylor-Morley-Simon under the insurance policy, necessitating Taylor-Morley-Simon to expend legal fees to defend itself in the McSherry lawsuit.
15. Michigan Mutual Insurance Company responded to Taylor-Morley-Simon's formal demand by denying coverage of the claim some six months after the initial February 1984 meeting. In particular, defendant relies on exclusions (1), (n), and A(3) of the policy as a basis for not defending or indemnifying Taylor-Morley-Simon in the McSherry lawsuit.
16. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

Conclusions of Law
1. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this declaratory judgment lawsuit, brought under 28 U.S.C. § 2201, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $10,000. It is undisputed that Missouri law applies to determine the merits of this case.
2. Under Missouri law, plaintiff has the burden of showing that the loss and damages at issue here are covered by the general liability policy, whereas the defendant insurer has the burden of showing that any exclusion on which it relies is applicable. Grossman Iron & Steel Co. v. Bituminous Casualty Corp., 558 S.W.2d 255, 259, 260 (Mo.App.1977).
3. Plain and unambiguous language in an insurance contract must be given its plain meaning, and the policy must be construed as a whole. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981)(applying Missouri law).
4. Here, the alleged damage to the McSherrys' home satisfies the policy requirement that it be caused by an "occurrence," or an accident resulting in property damage not expected or intended by plaintiff. The term "accident" is construed broadly and not limited to an event which occurs suddenly. St. Paul Fire and Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361, 364-65 (8th Cir.1966). Thus, an accident includes that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen. Id. Damage within the coverage of a liability insurance policy may include that resulting from the insured's negligence. White v. Smith, 440 S.W.2d 497, 508 (Mo.App.1969). The alleged breaches of warranty raised in the McSherrys' petition do not remove the conduct at *600 issue here from the "accident" category for purposes of this lawsuit. Missouri Terrazzo Co. v. Iowa National Mutual Ins. Co., 566 F.Supp. 546, 552 (E.D.Mo.1983), aff'd, 740 F.2d 647 (8th Cir.1984). Moreover, the cracking of walls, ceilings, and floors; the stress on water and gas lines; and the loosening of ducts throughout the McSherrys' home sufficiently constitute "physical damage ... to tangible property" so as to fall within the policy's definition of "property damage." Id. Thus, plaintiff has demonstrated that the policy may cover the alleged conduct and damage at issue here, unless an exclusionary clause applies.
5. Under Missouri law, provisions restricting coverage are construed in favor of the insured and against the insurer, who has the burden of clearly and unambiguously expressing its intent to exclude. Citizens Ins. Co. of New Jersey v. Kansas City Commercial Cartage, Inc., 611 S.W.2d 302, 307 (Mo.App.1980).
6. Defendant first urges that exclusion (1) precludes coverage because the damage was to residential premises alienated by the insured. Plaintiff argues (a) this exclusionary provision does not specify when the excluded damage is to have occurred, e.g., is damage excluded if it occurred before or only after the alienation, and (b) the record does not reflect when the damage at issue here occurred. If the provision applies regardless of when the damage occurred, then plaintiff urges this policy is a contract of adhesion. Plaintiff further contends that the provision's requirement that the property damage "[arise] out of such premises" is ambiguous, thus requiring an interpretation in favor of plaintiff.
The Court disagrees with plaintiff's position. The Court finds exclusion (1) unambiguously excludes coverage of damage to property alienated by the insured, thus it excludes damage to the home which was sold to the McSherrys by the insured, the only damage for which liability is asserted here. See Home Indemnity Co. v. Miller, 399 F.2d 78, 82-84 (8th Cir. 1968) (construing under Missouri law an exclusionary provision for damage to premises alienated by the insured). If the plaintiff had had no part in the alienation of the premises, then the alleged damage would not be excluded by this provision. Id. at 82. Moreover, this provision does not exclude coverage for personal injury or for property damage to other premises which arise out of the alienated premises. Id. at 82-83. For instance, if the McSherrys' home collapsed and damaged some other property or injured a person, then this provision would not exclude coverage under the policy. Id. Here, however, no liability for personal injuries or for damage to other property is claimed. Furthermore, the "property damage" definition explicitly states that it means physical damage to property occurring "during the policy period." Thus, the Court is not persuaded that the failure of exclusion (1) to specify the relevant time period renders the provision ambiguous or the policy a contract of adhesion.
7. Defendant urges that exclusion (n) also precludes coverage because damage for which liability is asserted here is to the McSherrys' home, and the whole home and its parts constitute the insured's "products." Plaintiff notes that the policy does not define "product," and expresses consternation that the McSherrys' custom-built home may be deemed a single product. Plaintiff contends this provision is "`boiler-plate language' engrafted from a policy that covers manufacture of goods that are commonly thought of as products, as in `products liability.'"
The Court agrees with defendant that in this case, plaintiff's product is the whole home. Id. at 83. Plaintiff here did not construct a part of the home, such as a room addition. This provision clearly and reasonably would not exclude liability for damage to work completed by others than the insured. See id. at 82 (construing under Missouri law a provision excluding damage to products of the insured out of which the accident arises); Biebel Bros., Inc. v. U.S. Fidelity & Guaranty Co., 522 F.2d 1207, 1211 (8th Cir.1975) (construing under Missouri law an identical exclusionary *601 provision to determine it precluded coverage of an insured roofer who was allegedly liable for damage to the roof only). Thus, if plaintiff was being sued for property damage to the rest of a home on which plaintiff built an addition or for personal injuries arising out of the home, then this provision would not proscribe coverage. Since plaintiff is only being sued for property damage suffered in plaintiff's own product arising out of that product or its parts, the exclusionary provision (n) prohibits coverage of this claim.
The case on which plaintiff relies, Missouri Terrazzo, supra, does not support a different result. In that case, the United States Court of Appeals for the Eighth Circuit found that, under Missouri law, an identical exclusionary provision did not preclude coverage for a floor poorly constructed by the insured which allegedly damaged the rest of the building constructed by others. Id. at 650-51. In fact, the Eighth Circuit expressly noted that if the insured's liability was based solely on the repair and replacement of the defective floor, as opposed to repair of others' work or the diminished value of the whole building, then, pursuant to this exclusionary provision, the liability would not be covered. Id. at 651.
8. Exclusion A(3) of the broad form endorsement also precludes coverage because the damage at issue here is to the plaintiff's work, the constructed home, and allegedly arises out of plaintiff's work or the materials and parts furnished in connection with that work. See Swan Construction Co., Inc. v. Bituminous Casualty Corp., 588 F.Supp. 65 (E.D.Mo.1984), aff'd, 767 F.2d 929 (8th Cir.1985) (under Missouri law, insured who was general contractor for whole building was not covered by general liability policy having nearly identical exclusionary provision in suit in which building owner alleged that insured contractor was liable for damage to building resulting from poor construction); see Biebel Bros., Inc., supra, 522 F.2d at 1211 (construing same provision as in Swan Construction).
9. Plaintiff argues that the policy's exclusion (a) does not by its terms apply to warranties regarding either the plaintiff's products or the plaintiff's work, both of which are at issue in the McSherrys' state court petition. Thus, plaintiff argues the exception to that exclusion creates coverage. See McRaven v. F-Stop Photo Labs, Inc., 660 S.W.2d 459, 462 (Mo.App.1983); but see Transport Indemnity Co. v. Teter, 575 S.W.2d 780 (Mo.App.1978). The McRaven court determined that two exclusionary provisions did not preclude coverage and the exception regarding warranties, similar to the one here, allowed coverage of a claim that the insured violated a warranty that services would be performed in a workmanlike manner. The Court however, finds that this exclusionary provision does not create coverage where, as here, the policy contains other exclusions clearly precluding coverage. See Helfeldt v. Robinson, 290 S.E.2d 896, 901 (W.D.Va.1981) (construing West Virginia law). More importantly, McRaven contradicts an earlier, well-reasoned appellate court opinion finding that an insurance policy's exclusionary provision does not "endow coverage" but only limits the insurer's obligation. Teter, supra, 575 S.W.2d at 784. The Court is not persuaded, moreover, that the exception to exclusion (a) may reasonably be applied to other exclusionary provisions since by its terms the exception is limited to exclusion (a). See Biebel Bros., supra, 522 F.2d at 1212. Therefore, exclusion (a) does not provide coverage for the liability at issue here.
10. While the Court concurs with plaintiff that exclusion (m) might not exclude from coverage the loss of use claim made by the McSherrys, this provision is intended to exclude risk, and not create coverage, see Teter, supra, 575 S.W.2d at 784. Thus, its relevant terms exclude certain loss of use damages and do not create coverage excluded by other provisions in the policy.
11. Finally, under Missouri law, estoppel cannot create coverage for or otherwise include in a policy a loss which is expressly or otherwise excluded by the terms of the insurance policy. Martinelli v. Security *602 Ins. Co. of New Haven, 490 S.W.2d 427, 434 (Mo.App.1972). Since policy exclusions (1) and (n), and the broad form exclusion (A)(3) exclude coverage of the losses and risks at issue here, plaintiff may not establish coverage by estoppel.
Accordingly, judgment will be entered in favor of defendant.

JUDGMENT
Findings of fact and conclusions of law dated this day are hereby incorporated into and made a part of this judgment.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff take nothing by its cause of action, that the action be dismissed on the merits, and that the defendant recover of the plaintiff defendant's cost of action.