756 F.Supp. 1232 (1991)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,
v.
STRUCTURAL SYSTEMS TECHNOLOGY, INC., et al., Defendants.
STRUCTURAL SYSTEMS TECHNOLOGY, INC., Plaintiff,
v.
INTERNATIONAL INSURANCE COMPANY, Defendant.
Nos. N 89-0037 C, N 89-0112 C.
United States District Court, E.D. Missouri, N.D.
January 25, 1991.
*1233 *1234 Fairfax Jones, St. Louis, Mo., W. James Foland, John S. Conner and Joel R. Mosher, Kansas City, Mo., for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.
*1235 Marion F. Wasinger, Hannibal, Mo., for KIRX, Inc.
Thomas J. Skeffington, Chicago, Ill., and Joseph L. Leritz, St. Louis, Mo., for Federal Broadcasting Co.
Daniel T. Rabbitt, T. Michael Ward, St. Louis, Mo., and Fred C. Alexander Jr., Alexandria, Va., for Structural Systems Technology, Inc.
Allen D. Churchill and Joseph B. McDonnell, Belleville, Ill., for Intern. Ins. Co.

MEMORANDUM OPINION
GUNN, District Judge.
This matter is before the Court for a decision on the merits. The parties have submitted stipulations of fact and exhibits, trial briefs, and proposed findings of fact and conclusions of law. The parties have consented to this Court's decision based on a review of all of the above-mentioned material. Accordingly, this Court adopts this memorandum opinion as its findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52.
Following an introductory paragraph, this memorandum will be divided according to findings of fact and conclusions of law. Much of the factual findings have been stipulated to between the parties. The conclusions of law section will be further divided according to each of the three policies of insurance at issue, and subdivided according to the particular exclusions at issue in each.
This matter consists of two consolidated cases dealing with the same issue: the duty of an insurer to defend and indemnify its insured in actions against it resulting from the collapse of a television broadcasting tower in Knox County, Missouri on June 2, 1988. In action N89-0037-C(6), National Union Fire Insurance Company ("National") filed a complaint for declaratory judgment, seeking this Court's determination of its duty to defend and indemnify its insured, Structural Systems Technology ("SST"), in actions brought against SST by Federal Broadcasting Company ("FBC") and KIRX, Inc. In action N89-112-C(6), SST filed a complaint for declaratory judgment against another one of its insurers, International Insurance Company ("IIC"), seeking a determination of its duty to defend and indemnify.

FINDINGS OF FACT
1) National is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in the state of New York.
2) SST is a corporation organized and existing under the laws of the state of Virginia with its principal place of business in the State of Virginia.
3) IIC is a corporation organized and existing under the laws of the state of Illinois with its principal place of business in the state of Illinois.
4) FBC, which owns the television station known as KTVO, is incorporated in the state of Missouri with its principal place of business in Missouri.
5) Federal Enterprises, Inc. (FEI), is a corporation incorporated under the laws of the state of Michigan and has its principal place of business in Michigan. At all relevant times, FBC and FEI were the legal title holders to a television station, broadcasting facilities, and transmission tower in Colony, Missouri.
6) KIRX, Inc. operates radio stations KIRX and KRXL and is incorporated in a state other than Pennsylvania or New York and has its principal place of business in a state other than Pennsylvania or New York.
7) None of the parties objects to this Court's jurisdiction or venue.
8) By letter agreement dated December 26, 1986, SST contracted with Gillett Communications Company (Gillett) for the erection of a 2000-foot broadcasting tower to be located near Colony, Missouri.
9) The land on which the tower was erected was, at all times relevant hereto, owned by Clayton and Carrol Hustead, who leased it to Gillett.
10) FBC and FEI subsequently purchased the tower from Gillett, and entered into a lease of the land with the Husteads *1236 on May 3, 1977, for a term of fifty years, renewable for terms of twenty-five years up to a total of fifty years. The lease provides for the construction of the tower on the property, and also permits lessee to remove any structures at the end of the lease, subject to repair of any damage occasioned by the removal.
11) SST purchased a policy of insurance from National, identified as policy no. GL XXX-XX-XX RA, which extended from September 30, 1987 until September 30, 1988. This policy consists of two parts, the Commercial General Liability Coverage (CGL) form, and the Products/Completed Operations Liability Coverage (P-CO) form.
12) SST purchased two policies of insurance from IIC. Policy no. 320-452241-4 is designated as the "Inland Floater Policy", with coverage extending from September 17, 1987 to September 17, 1988. The second policy, no. 523-491499-8, is designated "The Defender-Commercial Umbrella Policy", with coverage extending from September 30, 1987 until September 30, 1988.
13) On January 12, 1987, SST contracted with LeBlanc & Royle Telcom, Inc., for prefabricated steel components to be used in the erection of the tower. The contract provided that LeBlanc & Royle was to "Provide, Fabricate, Galvanize & Deliver to the site all materials per Drawings." SST selected LeBlanc & Royle as the fabricator of the steel components in the tower, provided the specifications for those components, and accepted and used the steel in erecting the tower.
14) On February 2, 1987, SST entered into a contract with KIRX, Inc., to redesign the tower to accommodate the KRXL-FM antenna and transmission line.
15) On June 19, 1987, SST entered into an additional contract with KIRX, Inc., to install additional antennas and transmission lines.
16) Not later than September 6, 1987, SST installed KTVO television transmission equipment onto the tower. The transmitter itself was installed into the building adjacent to the tower by entities other than SST.
17) Not later than September 21, 1987, television station KTVO began transmitting its broadcast signals from the tower.
18) SST performed under the contracts dated December 26, 1986, February 2, 1987, and June 19, 1987, completed the agreements, and was paid in full. Subsequently, defects were discovered in the tower.
19) SST revoked acceptance of the diagonal steel rods fabricated by LeBlanc & Royle by letter dated December 3, 1987. On December 15, 1987, LeBlanc & Royle agreed to replace the diagonal steel rods.
20) Not later than February 13, 1988, SST installed the KRXL-FM transmitter onto the tower.
21) Not later than March 1, 1988, KRXL-FM began transmitting its broadcast signals from the tower.
22) On or about June 2, 1988, the tower, then owned by FBC and FEI, collapsed. The tower and all attached broadcasting equipment of FBC, FEI, and KIRX, was destroyed in the collapse.
23) At the time of the collapse, SST employees were repairing the tower and replacing the diagonal rods on the tower. Both KIRX and FBC were using the facilities for the purpose intended at the time of the collapse.
24) The tower was taxed as leased real property in 1988 and 1989 by the Knox County Assessor.
25) FBC and FEI have sued, among others, SST and LeBlanc & Royle for damages arising out of the collapse of the tower. That suit, also filed in this district court, seeks damages in excess of $50,000 for damage to the tower, its transmission line, antenna system, and associated equipment, and also for the diminution in value of the stations and lost profits. Count I of that action alleges negligent design, manufacture, and assembly of the tower. Count II alleges negligent repair and modifications. Counts III through VII allege breach of contract, breach of implied warranty of workmanlike manner, strict liability, and res ipsa loquitor.
26) KIRX also has sued, among others, SST and LeBlanc & Royle for damages *1237 arising out of the collapse of the tower. It seeks damages in excess of $50,000 for damage to its radio antenna, transmission line system, other antennas and transmission lines, a diplexing system, and loss of advertising revenue. That suit is pending in Knox County Circuit Court, and alleges defects in manufacture, erection and design.

CONCLUSIONS OF LAW
Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, and 2201, and venue is proper pursuant to 28 U.S.C. § 1391(a).

A. National Policy # GL XXX-XX-XX RA

An insurance company's duty to defend an insured arises where the allegations of the complaint against the insured are potentially within the coverage of the policy. It is broader than the duty to pay a judgment rendered against the insured. Howard v. Russell Stover Candies, Inc., 649 F.2d 620 (8th Cir.1981). In this case, National claims that the allegations of FBC/FEI and KIRX in their complaints against SST, do not fall within such potential coverage of the policy. This policy is divided into two separate forms, the Commercial General Liability Form (CGL), and the Products-Completed Operations Form (P-CO). The Court will address these two forms separately. The CGL policy provides coverage, in part, as follows:
1. Commercial General Liability Form (CGL)
Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages.
* * * * * *
b. "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.
DEFINITIONS:
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
12. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property; or
b. Loss of use of tangible property that is not physically injured.
The lawsuits filed against SST allege damage to the tower itself, and to other attached equipment, such as transmission lines, antenna systems, and other associated equipment of FBC/FEI and KIRX. This Court finds that such alleged damage constitutes "property damage" within the meaning of the policy. While National claims that SST fails to meet its burden of proof in establishing damage other than to the tower, such is not the issue in these consolidated cases. Proof of such damage is the subject of the other lawsuits pending against SST. The subject of these lawsuits is limited to ascertaining the duty of National to defend or indemnify SST, in the event that other parties establish SST's liability for the property damage.
The Court also finds that the collapse of the broadcasting tower on June 2, 1988 constitutes an "occurrence" within the "coverage territory" of the policy during the policy coverage period.
National claims, however, that it is not obligated to defend or to reimburse SST by virtue of the alleged application of several exclusions to the policy. Those exclusions include the Professional Liability Exclusion, the "your product" exclusion (k), the "your work" exclusion (l), and the exclusions applying to property damage to personal property, real property, or property to be restored, repaired or replaced [j(4-6)].
*1238 In Missouri, the insured has the burden of proving that the loss and damages claimed are covered by the general liability or other insuring provisions, while the insurer has the burden of proving that any exclusion upon which it relies is applicable. Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F.Supp. 596, 599 (E.D.Mo.1986), aff'd 822 F.2d 1093 (8th Cir. 1987). Provisions restricting coverage are construed in favor of the insured and against the insurer, who has the burden of clearly and unambiguously expressing its intent to exclude. Taylor, supra.
To prevail, an insurer need not show that each exclusion is sufficient to preclude coverage, but rather, that any exclusion is sufficient to preclude coverage. Ott v. Crews, 830 F.2d 773, 777 (7th Cir.1987) (applying Mo. law).
The Court will now address the exclusions relied upon by National. In doing so, the Court will analyze each exclusion separately, indicating whether it does or does not apply, and whether, within that exclusion alone, National is obligated to defend and indemnify. After discussing all the exclusions separately, the Court will consider them as a whole and conclude as to the scope of National's duty under the policy.

"Professional Services Exclusion"
This exclusion provides as follows:
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.
This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:
1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
2. Supervisory, inspection or engineering services.
In their complaints against SST, FBC/FEI and KIRX allege that the collapse of the tower and resulting property damage was caused by the negligent design, manufacture, and assembly of the tower. These parties also allege negligent manufacture and erection, design defects, negligent repair and modifications, breach of contract, breach of implied warranty, strict liability and res ipsa loquitur. With respect to the allegations of property damage or advertising damage resulting from SST's design of the tower or supervisory, inspection, or engineering services, this Court finds that this exclusion applies. Therefore, with respect to these particular allegations, National has no duty to defend or indemnify under the CGL portion of the policy. The Court notes, however, that the allegations against SST are not limited to those falling within this exclusion and to that extent, the exclusion is not applicable.

"Your Product"
National claims that the following exclusion also applies to preclude coverage:
k. "Property damage" to "your product" arising out of it or any part of it.
"Your product" is defined as follows:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by (1) You;....
(Emphasis added.) The dispute over the applicability of this exclusion centers on whether the tower and other associated equipment constitutes real property, so as to except it from this exclusion.
At the time of the collapse, the tower and associated equipment was owned by FBC/FEI. The land on which the tower was situated is owned by the Husteads, and leased to FBC/FEI for a fifty-year, renewable, period of time. The lease, which was entered into between the parties in May, 1977, provides for the construction of the tower upon the property. It further provides "[t]hat at the termination of this lease Lessee shall have the right to remove any and all improvements or structures built on said lands, but Lessee shall repair any damage occasioned by such removal." (Stipulations, Exhibit "E", pg. 3). The tower *1239 was taxed as leased real property in 1988 and 1989 by the Knox County Assessor. (Stipulations, Exhibit "E", attachment).
In determining whether the tower was annexed to the land in such a way as to become a fixture of the real property onto which it is attached, three elements must be shown: "(1) annexation; (2) `adaptation' of the article to the location; and (3) the intent of the annexor at the time of the annexation." Wisdom v. Rollins, 664 S.W.2d 37, 39 (Mo.App.1984). In rendering such a determination, the courts often consider whether the article may be removed without inflicting significant damage to the land. Id.
With respect to the tower itself, the Court finds that it is real property. Clearly, it was intended by the parties to be a fixture on the land, given the size of the tower and the fifty-year, renewable lease of the property. The fact that the lease provides for its removal, if necessary, does not persuade this Court that the 2000-foot high tower constitutes "personal property". Furthermore, National, who bears the burden of proving the applicability of this exclusion, has not demonstrated to the Court that the property is personal and that the exclusion applies. See Taylor, supra.
With respect to the attached equipment of FBC/FEI and KIRX, the Court finds that it does not constitute the "product" of SST within the meaning of the exclusion. Such equipment was not manufactured by SST, as the tower was the only item actually constructed by SST. Further, the other equipment was not "sold, handled, distributed or disposed of by" SST. Within this context, "handle" means to "deal or trade in", rather than to touch. Gulf Mississippi Marine Corp. v. Fireman's Insurance Co., 697 F.2d 668, 672 (5th Cir.1983). Therefore, with respect to the allegations concerning damage to equipment other than the tower itself, this exclusion does not apply, and National is obligated to defend and indemnify SST for any liability.

"Your work"
This exclusion provides as follows:
1. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
"Your work" is defined as follows:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
With respect to this exclusion, the dilemma concerns whether or not LeBlanc & Royle, the manufacturer and supplier of the pre-fabricated steel rods in the tower, is considered a "subcontractor", so as to constitute an exception to this exclusion.
The policy does not define "subcontractor." Webster defines subcontract as "a contract that assigns some of the obligations of a prior contract to another party," and subcontractor as "one that enters into a subcontract and assumes some of the obligations of the primary contractor."[1] Similarly, subcontractor also is defined as "One who takes portion of a contract from principal contractor or another subcontractor," and "One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance."[2]
In determining the applicability of this exception, the Court is guided by several principles of contract construction. First, plain and unambiguous language in an insurance contract must be given its plain meaning. Taylor-Morley-Simon, supra, 645 F.Supp. at 599. Second, the insurer bears the burden of proving the applicability of an exclusion. Id. And finally, *1240 provisions restricting coverage are construed in favor of the insured and against the insurer. Id.
In this particular case, National has not proven to this Court that LeBlanc & Royle was merely a materialman and not a subcontractor within the meaning of the contract. Rather, it appears from all indications that LeBlanc & Royle's role was actually one of a subcontractor of a major component of the tower, the steel rods. According to the contract between SST and LeBlanc & Royle, the latter was to "Provide, Fabricate, Galvanize & Deliver to the site all materials per" certain specifications. The contract then outlines certain design and manufacturing specifications. Therefore, with respect to the tower, the exception to the exclusion does apply.
As to the other equipment alleged to have been damaged in the collapse, the Court finds that it does not constitute "your work" within the meaning of the policy exclusion. At the time of the collapse, the only work being performed was the repair of the tower by the replacement of the rods. Therefore, "your work" encompasses the repair operation only, especially since the actual installation of the other antenna and transmission systems already had been completed some time before. This exclusion, thus, does not apply to the other equipment alleged to have been damaged by the collapse.

"Other Exclusions"
National also claims that the following other exclusions apply to this situation:
j. "Property damage" to:
(4) Personal property in your care, custody or control;
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Paragraph 6 of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
"Products-completed operations hazard" is defined as:
11.a. ... all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
b. "Your work" will be deemed completed at the earliest of the following times:
(1) When all of the work called for in your contract has been completed.
* * * * * *
(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
With respect to the "care, custody or control" exclusion, at the time of the collapse the tower was in the care, custody or control of SST, in that it was repairing the tower by replacing the rods. However, since the Court, earlier in this opinion, found that the tower does constitute real property, this exclusion does not apply. With respect to the additional equipment, National has not borne its burden of showing the applicability of this exclusion. Since the purpose of the repair job was to replace the rods of the tower, and since no repair work to the transmission lines or antenna systems was included, the other equipment was not in the care, custody or control of SST within the meaning of this exception. Therefore, National is obligated to defend and indemnify.
With respect to exclusion j(5), since this Court has held that the tower is *1241 real property, the exclusion applies to the tower, if it is determined in later trials that the collapse "arose out of" the actual repair operations, as opposed to "out of" the alleged defective rods. Therefore, for purposes of this action, National has a duty to defend SST because of the potential for coverage. However, if it is determined at a later date that the collapse "arose out of" the tower, this exclusion will apply and National will have no duty to indemnify as to the tower damage. The Court further finds that exclusion j(5) does not apply to the other equipment, in that the transmission lines and antenna systems are not "real property".
Finally, with respect to exclusion j(6), the tower is not excluded because it falls within the "property-completed operations hazard" (p-coh) exception to the exclusion. Such exception applies here, since the work which was being conducted is treated as complete within the meaning of p-coh, in that the work of SST on the tower is characterized as "service, maintenance, correction, repair or replacement." The other equipment alleged to have been damaged is not excluded because it was not being restored, repaired or replaced.
In conclusion, with respect to the coverage of National's CGL policy, the Court finds that the damage to the tower and other property is excluded by the Professional Liability Exclusion, only with respect to those allegations claiming damage due to defective design or relating to SST's supervisory, inspection or engineering services. Therefore, as to those allegations only, National has no duty to defend or indemnify. However, with respect to all other allegations of the complaints of FBC/FEI and KIRX, National is liable to defend and possibly indemnify SST.
Finally, the Court notes that FBC/FEI claim loss of profits and diminution in value due to the tower collapse. "Property damage" is defined in the National policy forms to include "loss of use of that [tangible] property." Therefore, to the extent that it is determined that National is obligated to defend/indemnify concerning certain property damage, its obligation extends to loss of use of that property, which could be encompassed in a claim for lost profits or diminution in value.

2. Products-Completed Operations Liability Form (P-CO)
This part of the National policy provides coverage, in part, as follows:
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies.
2. Exclusions.
g. "Property damage" to:
(4) Personal property in your care, custody or control.
h. "Property damage" to "your product" arising out of it or any part of it.
i. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard.
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
After reviewing the introductory portion of this form, the Court concludes, as it did earlier with respect to the CGL form, that the damage to the tower and associated equipment constitutes "property damage" within the meaning of this agreement. The Court must then determine whether such damage is included within the "products-completed operations hazard" definition (the same as in the CGL form), that is, whether the damage arose out of "your (SST's) product" or "your (SST's) work", and whether such can be deemed "completed".
It is clear from earlier discussions within this memorandum that the repair operations undertaken by SST at the time of the collapse constitutes the "work" of SST within the meaning of the policy. Furthermore, the "work" of constructing the tower is deemed complete under the p-coh, *1242 as the definition specifically provides that work needing "maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete." Since FBC/FEI and KIRX were carrying on normal broadcasting operations at the time, the construction of the tower was otherwise complete, except for the "replacement" of the rods. Therefore, coverage applies under this section, both as to the tower and as to the other equipment.
National claims, however, that certain exclusions, cited above, apply to preclude coverage under this form. The first exclusion, for personal property in SST's "care, custody or control", is the same as exclusion j(4) under the CGL form. As discussed earlier with respect to that form, this exclusion does not apply to the tower because it is real property. In addition, with respect to the other equipment, this exclusion does not apply, as this Court earlier determined that at the time of the collapse, that equipment was not in the "care, custody or control" of SST.
The next exclusion, that of property damage to "your product," does not apply here, because the real property exception to the exclusion applies. The exclusion also does not apply to the other property, since it was not the "product" of SST.
Finally, the exclusion relating to property damage arising out of "your work" is the same as exclusion (k) of the CGL. Again, having earlier determined that the subcontractor exception to the exclusion applies, the Court finds that this exclusion does not apply to the tower or the other equipment.
Therefore, in conclusion, National has a duty to defend and indemnify with respect to the alleged property damage to the tower and other equipment, pursuant to the products-completed operations liability form of the insurance contract.

B. International Policy #XXX-XXXXXX-X

"The DefenderCommercial Umbrella Policy"
This policy, issued by IIC to SST, is an "excess" policy, covering amounts in excess of that covered in the two National policy forms. Coverage under this policy is limited to $5 million and depends on the coverage obtained under the National forms. Therefore, if it is determined that coverage is not available under the National forms, then it is not available under this policy. However, should coverage under the National policy apply, and should damages exceed the policy limits of $1 million, then coverage under this policy will apply.
Coverage here is outlined, in part, as follows:
A. Coverage A. We will pay those sums that the "insured" becomes legally obligated to pay as damages arising out of an "occurrence" which are in excess of the underlying insurance stated in Schedule A of this policy. The coverage provisions of the scheduled underlying policies are incorporated as a part of this policy except for....
B. Coverage B. With respect to any loss covered by the terms and conditions of this policy, but not covered as warranted by the underlying policies listed on Schedule A, or any other underlying insurance, we will pay on your behalf for loss caused by an "occurrence" which is in excess of the "retained limit" for liability imposed on you by law or assumed by you under contract for Bodily Injury, Personal Injury, Property Damage or Advertising Injury.
International also claims that certain exclusions in its policy apply to preclude coverage to SST. The exclusions in dispute are:
Personal Property Exclusion.
This policy does not apply to "Property Damage" to "Personal Property" in your care, custody or control.
"Personal Property" means all property other than real property.
Real Property Exclusion.
This policy does not apply to "Property Damage" to real property leased to, rented to, occupied or managed by any "Insured."
Again, as discussed earlier, the "personal property" exclusion does not apply to the tower and does not apply to the other *1243 equipment. The real property exclusion of this policy is somewhat different from the earlier, similar exclusions, in that it does not contain the subcontractor exception. To the extent that the tower was "occupied" by SST at the time of the collapse, damage to the tower itself would be excluded from policy coverage. However, damage to the other equipment does not fall within this exclusion.
In conclusion, IIC has a duty to defend SST, in that the allegations against SST potentially fall within the coverage of this Umbrella policy. To the extent that the limits of the National policy are reached and exceeded, this policy shall apply and IIC will have a duty to indemnify as to damage to property other than the tower itself.

C. International Policy #XXX-XXXXXX-X

"Inland Floater Policy"
The relevant provisions of this policy are as follows:
1. Property Insured
This policy insures materials, supplies, machinery, equipment and fixtures to be used in or incidental to the fabrication, installation, erection or completion of the property described in the schedule subject to the following provisions and stipulations.
3. Attachment of Coverage
This insurance attaches from the time such property is at the risk of the insured and, except as excluded elsewhere in this policy, covers continuously thereafter during transit, while awaiting and during installation, and after installation until:
(a) The interest of the insured in the property ceases, or
(b) The installation or erection of the property is completed and accepted as satisfactory, or
(c) The expiration of or the termination of this policy, and
(d) In respect to all property, when whichever of the foregoing conditions may first occur.
To the extent that property damage to the tower is excluded under part of the CGL policy, it can possibly be covered under this policy. The Court must determine whether the coverage period applies to the property damage to the tower. Unlike the previous policies, "Completion" as it is used in this policy is not defined by the policy or by any of the contracts at issue in these cases. According to principles of contract construction, where language in a contract is unequivocal, it is to be given its plain meaning. Luyties Pharmacal Co. v. Frederic Co., Inc., 716 S.W.2d 831, 835 (Mo.App. 1986). Furthermore, the insured retains the burden of proving the applicability of an exclusion. Taylor-Morley-Simon, supra, 645 F.Supp. at 599.
In this case, KTVO began transmitting signals in September 1987. In December 1987 SST revoked acceptance of the steel rods. SST did not complete work on the KRXL transmitter until February 1988, and KRXL did not begin transmitting until March 1988. Therefore, since not all of the installation work of SST was complete until after it revoked the steel rods, and since the act of revoking meant additional work on the tower, the Court finds that the project was not yet complete within the meaning of this policy, and therefore, that the policy period applies. The Court recognizes that at first glance, this conclusion might appear inconsistent, due to the earlier determination that the work was "complete" within the meaning of the "products-completed operations hazard" definition. However, with respect to that earlier determination, "complete" was defined by the policy itself to include repairs. Yet, with respect to this latter determination, "complete" is not defined, and the court finds that ordinary construction of such term would not encompass work here which was literally not finished, or complete. Therefore, this policy covers damage to the tower itself, and IIC has a duty to defend and indemnify SST.
This policy coverage is limited to materials, supplies, machinery, equipment and fixtures, used in the construction and erection of the tower itself. It does not, however, apply to the "other" property damage claimed by FBC/FEI and KIRX in *1244 the lawsuits filed against SST. The policy describes the covered property as: "Construction of radio communications and television towers." The "other" alleged property damage, such as transmission lines, antenna lines, a diplexing system, lost profits and advertising revenue, and diminution of value, does not fall within this description of covered property. That property is, however, covered by the National policy and the IIC Umbrella policy.
An appropriate judgment shall accompany this memorandum opinion.

JUDGMENT
In accordance with the memorandum opinion filed this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:
1. With respect to National policy # GL XXX-XX-XX RA, the Commercial General Liability Form, the Court finds in favor of National and against SST with respect to the duty to defend and indemnify against allegations of damage due to negligent design of the tower and/or antenna systems, and of damage due to negligent or faulty supervisory, inspection or engineering services.
However, as to all other allegations of property damage against SST, the Court finds in favor of SST and against National with respect to National's duty to defend. As to National's duty to indemnify, the Court finds in favor of SST and against National with respect to the allegations of damage to property, and loss of use of such, other than the tower itself. The Court finds in favor of SST and against National with respect to the tower damage, only in the event that it is determined in later actions that the collapse did not "arise out of" the tower, manufactured by SST.
2. With respect to National policy # GL XXX-XX-XX RA, the Products-Completed Operations Liability Form, the Court finds in favor of SST and against National concerning its duty to defend and indemnify as to all allegations of property damage, or loss of use of such, against SST.
3. With respect to International Policy #XXX-XXXXXX-X, "The Defender  Commercial Umbrella Policy," the Court finds in favor of SST and against International as to the duty to defend SST in actions alleging damage to property other than the tower itself. The Court finds in favor of International and against SST with respect to its duty to defend and indemnify in actions alleging damage to the tower.
4. With respect to International Policy #XXX-XXXXXX-X, the "Inland Floater Policy," the Court finds in favor of SST and against International as to the duty to defend and indemnify SST against allegations of damage to the tower.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each party shall bear its own costs.
NOTES
[1] WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1984).
[2] BLACK'S LAW DICTIONARY 1593 (rev. 4th ed. 1968).