964 F.2d 759
 NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, Appellant,
v.
STRUCTURAL SYSTEMS TECHNOLOGY, INC., Federal Broadcasting
Company; Federal Enterprises, Inc.; and Kirx,
Inc., Appellees.
STRUCTURAL SYSTEMS TECHNOLOGY, INC., Appellee,
v.
INTERNATIONAL INSURANCE COMPANY, Appellant.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA, Appellee,
v.
STRUCTURAL SYSTEMS TECHNOLOGY, INC., Appellant.
FEDERAL BROADCASTING COMPANY, Federal Enterprises, Inc. and KIRX, Inc.,
Structural Systems Technology, Inc., Appellants,
v.
INTERNATIONAL INSURANCE COMPANY, Appellee.
 Nos. 91-2699 to 91-2701.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 9, 1992.
Decided May 15, 1992.
Rehearing Denied June 26, 1992.
 
 Joel R. Mosher, Kansas City, Mo., argued (W. James Foland and David E. Shay, on brief), for Nat. Union.
 James S. Stickles, Chicago, Ill., argued (Allen D. Churchill, Belleville, Ill., on brief), for Intern. Ins.
 Daniel T. Rabbitt of St. Louis, Mo., argued (Fred C. Alexander, Jr., Alexandria Va., on brief), for appellee.
 Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 This appeal arises out of the collapse of a broadcast tower in Knox County, Missouri. Federal Broadcasting Corporation and Federal Enterprises, Inc., the owners of the tower, and KIRX, a radio station which used the tower for broadcasting, sought damages arising from the loss of the tower from Structural Systems Technology, Inc., the building contractor for the tower. National Union Fire Insurance Company, invoking diversity jurisdiction, filed a declaratory judgment action seeking a determination of its duty to defend and indemnify Structural Systems under a Commercial General Liability Policy and a Products-Completed Operations Policy. Structural Systems also filed a declaratory judgment action to determine the obligations of another one of its insurers, International Insurance Company. The district court[1] consolidated these actions, and the parties submitted the case to the court on stipulated facts. The court held that National and International had a duty to defend and indemnify Structural Systems under the policies,[2] and denied Structural Systems' motion for attorneys' fees. We affirm the district court's decision.
 
 
 2
 The facts of this case are set forth in the district court's decisions and need not be repeated here. National Union Fire Ins. v. Structural Sys. Tech., Inc., 756 F.Supp. 1232 (E.D.Mo.1991); National Union Fire Ins. v. Structural Sys. Tech. Inc., 764 F.Supp. 145 (E.D.Mo.1991). The arguments on appeal concern the district court's interpretation of the policies.
 
 
 3
 Some general principles govern our consideration of this appeal. First, an insurer's duty to defend is determined by comparing the policy provisions with the allegations charging the insured with liability. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 624 (8th Cir.1981). An insurer's duty to defend is broader than the duty to indemnify. Id. at 625. There is a duty to defend if the complaint alleges facts which state a claim potentially within policy coverage. Id. at 624. Second, in Missouri the insured has the burden of proving that the loss and damages claimed are covered by the insuring provisions, and the insurer has the burden of proving the applicability of any exclusion upon which it relies. Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co., 645 F.Supp. 596, 599 (E.D.Mo.1986) (citing Grossman Iron & Steel Co. v. Bituminous Cas. Corp., 558 S.W.2d 255, 259-60 (Mo.Ct.App.1977), aff'd, 822 F.2d 1093 (8th Cir.1987). Finally, we review the district court's conclusions of law de novo, giving no deference to the decision of the district court. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1219, 113 L.Ed.2d 190 (1991); John Deere Ins. Co. v. Shamrock Ind., Inc., 929 F.2d 413, 417 (8th Cir.1991).
 
 I.
 
 4
 International argues that the district court erred in concluding that the tower was covered under the Inland Floater Policy at the time of the collapse because the policy was no longer in effect and because Structural Systems no longer had an insurable interest in the materials and supplies which it installed in constructing the tower.
 
 
 5
 The relevant provision of the policy provides that insurance coverage exists until "[t]he installation or erection of the property is completed and accepted as satisfactory...." (Emphasis added). International contends that the owners were transmitting radio and television signals at the time of the tower's collapse and had paid the contract in full, and using the definition of completion set forth in the construction contract and that found in case law, the tower was "completed and accepted," and therefore, beyond the coverage period. We reject this argument. As the district court observed, Structural Systems revoked acceptance of the steel rods in December 1987, and at the time of the collapse, employees of Structural Systems were repairing the tower and replacing the diagonal rods. Thus, the tower was not completed or accepted under the policy terms.
 
 
 6
 For similar reasons, we reject International's assertion that Structural Systems did not have an insurable interest in the materials and supplies used in the construction of the tower. International contends that risk of loss to the tower passed as a matter of law when Structural Systems closed on the purchase of the tower, accepted title, and paid full purchase price. We are satisfied that Structural Systems retained an insurable interest in the materials and supplies used in constructing the tower because construction of the tower was not complete. See M.F.A. Mut. Ins. Co. v. Gulf Ins. Co., 445 S.W.2d 829, 832-33 (Mo.1969) (contractor had insurable interest in house based on contractor's duty to rebuild house in event of loss during construction).
 
 
 7
 International also contends that the district court erred in declaring that it had a duty to defend and indemnify Structural Systems for property damage claims brought by third parties under the Floater Policy. International contends that the district court failed to give the policy language its plain meaning and consider the policy as a whole, and that the policy does not provide coverage for property damage claims bought by third parties.
 
 
 8
 The policy insures "materials, supplies, machinery, equipment and fixtures to be used in or incidental to the fabrication, installation, erection or completion of the property described in the schedule...." The schedule describes the property: "[c]onstruction of radio communications and television towers." The policy further provides: "This policy insures against all risks of direct physical loss of or damage to the property covered hereunder from any external cause ... except as provided elsewhere in this policy." (Emphasis added).
 
 
 9
 We have reviewed the claims of Federal Enterprises, Federal Broadcasting, and KIRX, and are satisfied that Structural Systems met its burden of showing that property damage claims of third parties fall within the policy's provisions.
 
 II.
 
 10
 International contends that the district court erred in concluding that the "personal property"[3] exclusion did not apply because the tower was real property. International argues that the district court failed to consider the parties' intent in attaching the tower to the land, and that the parties did not intend the tower to be part of the land. International says that the parties intended the tower to be a trade fixture, which is personal property, and that the diversity of ownership between the tower and land proves that the tower was a fixture.
 
 
 11
 Under Missouri law, the question of whether a fixture annexed to real estate becomes real property depends on a consideration of (1) the annexation; (2) the "adaption" of the article to the location; and (3) the intent of the annexor at the time of annexation. Marsh v. Spradling, 537 S.W.2d 402, 404 (Mo.1976). The tower was 2000 feet tall, annexed to land subject to a renewable, fifty-year lease, and taxed as leased real property. We are satisfied that the tower constitutes real property. Cf. Willett v. Centerre Bank, 792 S.W.2d 916, 919 (Mo.Ct.App.1990) (items such as mirrors and shelving constitute trade fixtures).
 
 
 12
 International and National both contend that the district court erred in concluding that the "your work," "your product" and "custody, care and control" exclusions contained in their policies did not preclude coverage. The insurers contend that the personal property exclusion[4] applied to the tower and broadcasting equipment because the tower and equipment were under the care, custody, or control of Structural Systems. The insurers argue that the district court's conclusion to the contrary is inconsistent with the court's finding that Structural Systems was repairing the tower at the time of the collapse.
 
 
 13
 In light of our conclusion that the tower constitutes real property, we reject the insurers' argument that the tower is excluded under the personal property exclusion. The exclusion applies only to the care, custody, or control of personal property. We also cannot conclude that the district court erred in ruling that the equipment attached to the tower was not under Structural Systems' care, custody, or control. Structural Systems' replacement of the tower's diagonal rods did not render the attached equipment under Structural Systems' care, custody, or control.
 
 
 14
 The insurers also contend that the district court erred in concluding that the "your work" exclusion did not preclude coverage. The district court concluded that the "your work" exclusion did not apply because LeBlanc & Royle, the manufacturer and supplier of the prefabricated steel rods, was a subcontractor so as to bring Structural Systems within an exception to the exclusion.[5] 756 F.Supp. at 1239-40. Here, Structural Systems contracted with LeBlanc & Royle to fabricate specially designed steel rods for a transmission tower. We reject National's characterization and conclude that the exception to the exclusion applies. Russell Stover Candies, 649 F.2d at 623 (when insurance policy is open to different constructions, the construction most favorable to the insured must be adopted).
 
 III.
 
 15
 Structural Systems cross appeals, arguing that the district court erred in refusing to award its attorneys' fees under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1988). We cannot conclude that the district court erred or abused its discretion in refusing to award attorneys' fees. See, e.g., McCuen v. American Cas. Co., 946 F.2d 1401, 1408-09 (8th Cir.1991).
 
 
 16
 We affirm the district court's judgment and denial of Structural Systems' motion for attorneys' fees.
 
 
 
 [1]
 The Honorable George P. Gunn, Jr., United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Finding one exception, the district court held that National had no duty to defend or indemnify against allegations of damage due to negligent design of the tower or antenna systems and of damages due to negligent supervision, inspection, or engineering. 756 F.Supp. at 1238. Structural Systems does not appeal this ruling
 
 
 [3]
 The policy excluded coverage for " 'Property Damage' to 'Personal Property' in [Structural Systems'] care, custody or control," and defined "Personal Property" as "all property other than real property."
 
 
 [4]
 International's policy provision is set forth in footnote 3, supra. National's policy also excludes coverage for property damage to "[p]ersonal property in [Structural Systems'] care, custody or control."
 
 
 [5]
 The district court later amended this ruling, explaining that if Structural Systems' assembly and erection of the tower is found to be the sole cause of the collapse, the "your work" exclusion would apply. 764 F.Supp. at 146 (emphasis in original)