**GULF MISSISSIPPI MARINE CORP., et al., Plaintiffs,**

v.

**GEORGE ENGINE COMPANY, INC., Defendant,**

**and**

**ORANGE SHIPBUILDING CO., INC., Defendant-Appellant,**

v.

**FIREMEN'S INSURANCE CO. OF NEWARK, NEW JERSEY, Defendant-Appellee.**

**No. 81–3665.**

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1983.

Rehearing Denied March 21, 1983.

Henderson, Hanemann & Morris, Charles Hanemann, Houma, La., for defendant-appellant.

Normann & Normann, Russell M. Cornelius, New Orleans, La., for defendant-appellee.

Before WISDOM, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

This appeal concerns only the dismissal by summary judgment of a third-party complaint by a defendant ("Orange") against its insurer ("Firemens"). The defendant Orange had constructed or assembled some vessels for another defendant ("George Engine"), which had sold them to the plaintiffs. The plaintiffs' admiralty action had joined as defendants George Engine, Orange, and the manufacturers of the vessels' engines and gears, alleging damages had resulted from defects in the design, manufacture, and installation of major components of the vessels, particularly the engines and gears.

Orange was sued for the cost of repairs and replacements of the engines and gears

and other defective or defectively installed parts, as well as for the plaintiffs' loss of revenue down to downtime thereby necessitated. Orange impleaded Firemens as third-party defendant, as its insurer under a Comprehensive General Liability coverage. The district court granted Firemens' motion for summary judgment, upholding the insurer's contention that the vessel and all its constituent parts were Orange's "work products" and thus wholly within exclusion clauses of Firemen's policy. We find, however, that the certain of allegedly defective components of the vessels were owned by George Engine (not by Orange) and were under the factual showing merely installed by Orange as a subcontractor for George Engine—and were thus not Orange's work or products, since neither "products manufactured, sold, handled or distributed by the named insured" nor work performed by, or on behalf of the named insured, within the policy definitions. We therefore reverse the grant of summary judgment as improvidently entered.

### 1. The "Work Products" Exclusion Clauses: In General

In its motion for summary judgment, Firemens relied upon certain clauses of its policy, to be quoted below, (see 673 infra), that excluded from coverage property or other damage attributable to the named insured's products or to work performed by the named insured. The jurisprudential background underlying the adoption of these work products exclusion clauses in the new 1966 standard comprehensive liability insurance coverage is authoritatively analyzed in Henderson, Insurance Protection for Products Liability and Completed Operations, 50 Neb.L.Rev. 415 (1971). In general, their purpose is to exclude from coverage any obligation of the policyholder to repair or replace his own defective work or defective products; the coverage thus extends only to damages to the products of other than the named insured.[1] The exclusion clauses are also intended, in general, to apply to a manufacturer's or supplier's entire finished products, regardless of whether he makes each component part himself, or buys some or all parts and assembles them into the final product.[2]

The central contention of Firemens, the insurer, is that its exclusion clauses preclude any coverage because the entire vessels and all their component parts are Orange's products, since Orange manufactured the entire vessel—not only their defective installation, the defects in the component parts themselves, are thus to be regarded as defects in Orange's finished product. Orange opposed summary judgment by pointing out that it had only undertook to perform certain work as a subcontractor, building the hull, and that it installed other parts of the vessel from components principally furnished and owned by George Engine. Orange thus contends that damages to these non-owned component parts, or resulting from defects therein, did not result from defective work or product of Orange, the named insured.

### 2. The Present Facts

■ Preliminarily, we note that the coverage issue was decided by summary judgment, which may be granted only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In assessing whether a party moving for summary judgment has met "the exacting burden" of so showing, all factual showings and the inferences therefrom must be viewed most favorably to the

---

1. 7A J. Appleman & W. Berdal, Insurance Law and Practice §§ 4508.01, 4508.02 (1979); 12 G. Couch, R. Anderson & G. Rhodes, Couch on Insurance § 44A:49–60; Henderson Insurance Protection for Products Liability and Completed Operations, 50 Neb.L.Rev. 415, 441–45 (1971). See, e.g., Peltier v. Seabird Industries, 304 So.2d 695, 706 (La.App.1975).

2. See, e.g., Pittway Corp. v. American Motorists Ins. Co., 56 Ill.App.3d 338, 13 Ill.Dec. 244, 245, 370 N.E.2d 1271, 1272 (1977) (involving a valve manufacturer that assembled aerosol can valves from components purchased from others, subsequently selling the completed valves for use in aerosol hair spray containers); Anderson, supra, note 1, 50 Neb.L.Rev. at 442–43.

opposing party, and all reasonable doubts about the facts resolved in his favor. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). Therefore, although some of the damages here sought may possibly be excluded from coverage by the clauses in question, we will not for present purposes—deciding whether summary judgment was properly granted—attempt to analyze those within and those excluded from the coverage. For present purposes, it is sufficient to determine only whether some of the damages sought from Orange are arguably within (*i.e.,* not indisputably without) the protection afforded Orange by the policy issued to it by Firemens.

The plaintiffs' complaint seeks damages from Orange resulting from, inter alia, defects in the design of the vessels purchased, as well as defects in the design, manufacture, and construction of the gears and engines (and other parts). Orange is sought to be held liable for defects in the component parts, as the builder of the entire vessels, as well as, additionally, for improper installation of the component parts and other construction defects. The latter include the use of improper materials and components, one of which was the mismating of the particular types of engines used with the particular type of gears used.

The vessels were built or assembled by Orange for George Engine pursuant to a contract between them. There, Orange as "Subcontractor" agreed to "build, equip, and deliver complete" the vessels to George Engine, as "Owner". However, under the actual terms of the contract, Orange's contractual responsibility was to build a hull and assemble and install in it principal components (such as engines and gears) furnished to it by George Engine, in accordance with plans and specifications furnished by the latter. Although Orange warranted its own work and product, it did not warrant any of the major components supplied by George for it to install. Instead, the ownership of these components remained with George Engine, which arranged for the manufacturer's warranties to "pass through" to each vessel's ultimate purchaser. The vessels, incidentally, were built "on speculation" by George Engine, which was principally a distributor in maritime engines and gears, etc., with this owner planning to find customers for them prior to, or soon after, their completion.

In summary, Orange is sought to be held liable as builder or assembler of the vessels for, inter alia, damages (the costs of repair and replacement of the components, and damages consequentially resulting from their malfunctioning) that resulted from defects in the design of the vessels and in the component parts (including engines and gears) themselves, including also the mismatched selection of component parts that caused them to be unfit for their intended purposes. The cited deficiencies were aspects of the construction of the vessels that, by the terms of Orange's contract with George Engine, pertained to components owned and furnished by George Engine for installation by Orange in accordance with George Engine's designs and specifications.

Under the factual showing made for purposes of summary judgment, thus, the general issue for determination of whether the "works products" exclusion applies is: if Orange is ultimately cast for damages resulting from the defects in these component parts and their mismatched selection, are these component parts and their selection to be regarded as Orange's "product", as defined by the policy (and thus excluded from coverage by the clauses in question).

3. *The Particular "Works Products" Exclusion Clauses and their Application to the Present Facts*

In holding that the damages sought were entirely excluded from coverage, the district judge primarily relied upon exclusion clause (n), and a policy definition. This clause provides that the policy does not apply

(n) to property damage to the *named insured's products* arising out of such products or any part of such products

(Emphasis added.) The policy definition relied upon was that defining the products of Orange, the named insured:

> "named insured's products" means goods or products manufactured, sold, *handled* or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), * * *

(Emphasis added.)

With regard to the defective engines, gears, and other parts furnished by George Engine to Orange for assembly by Orange into the completed vessel, the district court concluded that—even though they were not "manufactured", "sold", or "distributed" by Orange—, they were nevertheless "handled" by it.

In so doing, the trial court relied upon *Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co.,* 189 Kan. 528, 370 P.2d 396 (1962). There, a heating contractor had purchased two components for installation by it as a complete unit, but it had negligently connected one of them to the other, causing damage to the other. The court rejected the contention that the exclusion clause only applied to the defective part but did not exclude recovery of damage to "other items handled or installed for it which were damaged by the defective item." 189 Kan. at 530, 370 P.2d at 397. The present trial court accepted the present insurer's contention that the concept of "handled" by the assembler included any physical handling of the components. This holding overlooks that both in the factual context of the cited decision and in the jurisprudential authority relied upon by it the damaged other component had been purchased by the named insured for use in completing the contract (and thus "handled" or dealt with in a commercial trading context) and that, if the damaged part had been the property of another damaged by the insured's defective produce, the exclusion clause would not have applied.[3]

Subsequent to the trial court's decision in this instant case, this court expressly rejected the contention that the term "handled" in this exclusion clause included the concept of physical handling or touching. Following the preponderant jurisprudential construction of the term in the light of interpretative principles construing ambiguities against the insurer and in the light of the purpose of the exclusion clause, we held "that the verb 'handled' as used in exclusion (n) means 'to deal or trade in' rather than 'to touch'". *Todd Shipyards Corporation v. Turbine Service, Inc.,* 674 F.2d 401, 420 (5th Cir.1982). Accordingly, the clause was there held not to exclude recovery from their insurers for damages to the principal-owned turbine, by subcontractors who had performed repair work upon this turbine: that turbine was neither "manufactured", "sold", "distributed", nor *"handled"* by the insured within the policy's meaning. For the same reasons, no more excluded in the present case are the defective motors, bearings, and other parts furnished by George Engine to Orange, the present insured, for installation and assembly by Orange onto the hull manufactured by Orange, per the contract between those parties.

■ The central concept relied upon by Firemens, the insurer, is that the entire vessel, including all its component parts, should be regarded as Orange's product for purposes of the exclusion clause. No decision cited to us or that we could readily discover has held that, for purposes of the work products exclusion clauses, a subcontractor who installs components owned by the principal into a completed work is the manufacturer of the whole, so that no coverage is afforded for damages resulting from defects in the principal-owned components, as distinguished from those that stem from the "product" itself (within the policy definition) furnished by the insured subcontractor. To the contrary, as indi-

---

**3.** See *Kendall Plumbing, supra,* relying upon another decision that excluded recovery for repairing defective plaster (the product) sold by the insured plaster distributor, which decision, however, "refused to allow recovery under the policy for the defective plaster but *did* allow resulting damages to the building [to which applied]." 189 Kan. at 531, 370 P.2d at 398 (emphasis added).

cated by decisions cited above, where the work of the insured involves assembling, repairing, or installing parts owned by another entity, the completed whole is not regarded as the insured's product within the meaning of the exclusion clause. Rather, the inquiry is whether a component part that failed and caused the damage sought was "manufactured, sold, handled or distributed by the named insured" so as to be his product within the meaning of the policy's exclusion. As earlier noted, the present damage-causing defective engines, gears, and other components furnished by George Engine to Orange for installation into the completed vessel were neither "manufactured, sold, handled or distributed" by Orange so as to be its product within the meaning of exclusion clause (n).

In its motion for summary judgment, the insurer Firemens also relied upon two other exclusion clauses that provide that the policy does not apply:

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Clause (o) applies so as to "eliminate coverage for the cost of repairing or replacing the insured's *own* work product", *Todd Shipyards Corporation, supra,* 674 F.2d at 420 (such as, here, any defective assembling that may have resulted from Orange's defective performance of *its* installation contract). Further, the damages did not arise out of materials or parts furnished in connection with the named insured's own "work". The present components owned by George Engine were not "furnished" *by* the

named insured within the meaning of the policy, so as to be within the insured's work product, for reasons generically similar to those for which they were not "handled" by the named insured.

The clause was added to the 1966 standard comprehensive liability coverage to eliminate the issue raised in *Kendall Plumbing, Inc., supra,* and decided by a minority of courts against exclusion, *see, e.g., S.L. Rowland Construction Company v. St. Paul Fire & Marine Insurance Co.,* 72 Wash.2d 682, 684, 434 P.2d 725 (1967): When a contractor undertakes to build a whole from components acquired and furnished *by* it, did the previous works product exclusion clause exclude damages caused by one (contractor-furnished) component to another (contractor-furnished) component; or did, instead, the exclusion clause apply to the entire finished product constructed from contractor-owned components, including each component part thereof? *Todd Shipyards Corporation, supra,* 674 F.2d at 420–22 (the clause "excludes coverage for the cost of repairing or replacing non-defective as well as defective components of the *insured's* work product.") (Emphasis added.) 674 F.2d at 422); Henderson, *supra,* 50 Neb. L.Rev. at 442–43; Tarpey, The New Comprehensive Policy: Some of the Changes, 33 Ins. Counsel J. 223, 226 (1966). The new clause makes plain that in such instance, the completed work is the insured's product.

However, neither the unambiguous wording of the clause, nor the construction of the policy as a whole, nor jurisprudential holdings or the indicated reasons for the clause's adoption as part of the standard coverage in 1966—indicate any intent that products of another than the named insured, furnished by this other to the named insured for installation in conjunction with the insured's own product, are to be regarded as "furnished" *by* the named insured; those products furnished by another are thus *not* to be regarded as the insured's product or as furnished in connection with the insured's work, for purposes of the exclusion clause, when damage results from defects in the non-owned 'component itself.

The exclusion clause applies only to "the work actually performed" by the named insured, but it does not exclude coverage beyond that work. *Adams Tree Service, Inc. v. Hawaiian Insurance & Guaranty Co.,* 117 Ariz. 385, 573 P.2d 76, 80 (App.1977) (collecting decisions to same effect). *Cf., Todd Shipyards Corporation,* 674 F.2d at 421: "exclusion (*o*) carves out of the policy damage to the particular work performed by the insured, but not the overall damage that incorporation of the defective work product caused to the entire entity."

The other exclusion clause—(p), *supra,*—is under the pleadings clearly inapplicable. Often referred to as the "sistership" exclusion, it "is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in which a danger is to be apprehended [because of a common defect in a sister product] ... It is not, however, intended to exclude from coverage damages caused by the very product whose failure to perform properly aroused apprehension about the quality of 'sister' products ... [nor] damages arising from the malfunctioning of product where no 'sister' products are involved." *Todd Shipyards Corporation, supra,* 674 F.2d at 419.

*Conclusion*

We conclude that under the factual showing there were disputed factual issues as to whether at least some of the damages sought against Orange were Orange's "product" within the meaning of the products exclusion clauses relied upon by Firemens, third-party defendant, and that therefore summary judgment was improvidently entered dismissing Orange's third-party complaint against its insurer, Firemens. Accordingly, we REVERSE the summary judgment dismissing such complaint, and we REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.