**HI–PORT, INC., Plaintiff,**

v.

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, American International Surplus Lines Agency, Inc., and AIG Claims Services, Inc., Defendants.**

No. Civ.A. H–96–3279.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 4, 1997.

Kevin T. Hedges, Lukin & Hedges, Houston, TX, for Hi–Port Inc, Plaintiff.

G. Byron Sims, Ewell H Jackson, IV, Brown, Sims, Wise & White, Houston, TX, for American International Specialty Lines Insurance Company, Defendants.

## MEMORANDUM OPINION

ATLAS, District Judge.

Plaintiff Hi–Port, Inc. filed its Original Petition and First Amended Original Petition in State Court against American International Specialty Lines Insurance Company, American International Surplus Lines Agency, Inc.[1] (together referred to as "AISLIC") and their Managing Agent, AIG Claims Services, Inc. ("AIG") seeking declaratory relief regarding insurance coverage under Comprehensive General Liability Policy # GL773–53–14 (the "Policy"). Plaintiff also asserted claims for breach of contract, violation of the Texas Insurance Code § 21.21, violation of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of the common law duty of good faith and fair dealing.

Defendants filed a timely notice of removal based on diversity of citizenship. The Court has original jurisdiction under 28 U.S.C. § 1332. The case is now before the Court on Defendants' **Motion for Partial Summary Judgment** [Doc. # 18], Plaintiff's **Cross–Motion for Summary Judgment** [Doc # 26], and Defendants' **Second Motion for Summary Judgment** [Doc. # 31].

The Court has carefully considered the motions and accompanying briefs and exhibits. Based on this review, the Court concludes Defendants are entitled to summary judgment. If Plaintiff's work was improperly performed in some manner, at least one of the exclusions apply. Alternatively, if Plaintiff's work was properly performed, there was no legal obligation for Plaintiff to have paid Valvoline and that payment is not within the coverage provision of the Policy. Because Plaintiff's claim for reimbursement under the Policy was properly denied by Defendants, the related tort claims also fail.

## FACTUAL BACKGROUND

The facts relevant to the motions for summary judgment are undisputed.[2] Plaintiff is in the business of providing contract chemical blending, packaging and distributing services. One of Plaintiff's largest customers is Valvoline. Valvoline supplies the basic feedstocks for the antifreeze, which Plaintiff blends with other chemicals in accordance with Valvoline's proprietary formula and blending procedure. The resulting antifreeze is packaged and distributed by Plaintiff.

In May 1995, Plaintiff blended, packaged, and distributed antifreeze for Valvoline. On July 25, 1995, Valvoline received a customer

---

**1.** Plaintiff inaccurately referred to Defendant AISLIC as American International Specialty Lines Insurance Company, American International Surplus Lines Insurance "Company" (instead of "Agency") in the First Amended Petition. The error was corrected in Plaintiff's Second Amended Original Complaint [Doc. # 20].

**2.** The mysterious cause of the "seed" generations remains unresolved, but is not a relevant dispute in this proceeding.

complaint that a silicate gel had fallen out of the antifreeze.

Valvoline, according to ¶ 8 of Plaintiff's Second Amended Original Petition, claimed that "a 'seed' was generated during the blending of the antifreeze that resulted in a latent silicate fallout problem which occurred after the antifreeze had been packaged and distributed." Defendants *argue* this establishes the blending process as the time when the property damage occurred. Defendants note that the antifreeze was in the care, custody or control of Plaintiff during the blending process.

Valvoline recalled the batch of antifreeze and asked Plaintiff to pay for it. Valvoline also asked Plaintiff to reimburse it for the expenses incurred in the recall. Plaintiff agreed to pay the amounts requested by Valvoline.[3]

Plaintiff was the insured under a Comprehensive General Liability Policy issued by AISLIC. Plaintiff notified Defendants of Valvoline's request. Defendants denied coverage based on a number of exclusions in the Policy and this lawsuit followed.

### SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted

evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

---

3. Plaintiff's agreement to comply with Valvoline's request for payment without proof that Plaintiff caused the problem, removed the "duty to defend" issue. There has not been any finding that Plaintiff was legally obligated to pay the requested sums.

## DISCUSSION

Defendants based their decision to deny coverage on Exclusions "j(4)," "j(6)," "k," "1," and "n" in the Policy. Policy, Commercial General Liability Coverage Form, Section I, Coverage A (hereinafter, referred to as "Policy"), ¶ 2. Exclusion "j(4)" excludes coverage for property damage to personal property in the care, custody or control of the insured. Exclusions "j(6)" and "1" exclude coverage for property damage that must be restored, repaired or replaced because the insured's work was incorrectly performed. More specifically, Exclusion "j(6)" applies to work that was incomplete at the time of the damage; Exclusion "1" applies to completed work. Exclusion "k" excludes coverage for property damage to the insured's product, and Exclusion "n" is a standard "sistership" exclusion.[4]

Defendants have the burden to prove the applicability of exclusions. Tex.Ins.Code Ann.Art. 21.58(b) (Vernon Supp.1997); *Sentry Insurance v. R.J. Weber Company, Inc.*, 2 F.3d 554, 556 (5th Cir.1993). The burden is on Plaintiff to prove that Valvoline's request for payment is within the policy's coverage. *Id.*

Although Defendants assert several exclusions in support of their denial of coverage, any single exclusion is sufficient to preclude coverage. *See National Union Fire Insurance Co. v. Structural Systems Technology, Inc.*, 756 F.Supp. 1232, 1238 (E.D.Mo.1991), *aff'd*, 964 F.2d 759 (8th Cir.1992). Additionally, failure by Plaintiff to prove Valvoline's claim falls within the coverage provision is fatal to coverage. *See Sentry Insurance*, 2 F.3d at 556.

***Defendants' Arguments Construing Valvoline's Claim.*—**Plaintiff alleges, and Defendants do not dispute, that Valvoline claimed the antifreeze was damaged when a "seed" was generated during the blending process performed by Plaintiff. Under this circumstance, Exclusions "j(4)," "j(6)," "k," and "n" apply and Defendants are entitled to summary judgment.

■ Coverage for damage to personal property in the care, custody or control of the insured is excluded under Exclusion "j(4)" of the Policy. Policy, ¶ 2(j)(4). It is undisputed that the antifreeze is personal property. The term "care, custody or control" as used in an insurance policy means to have the right to exercise dominion over the subject matter. *Security Mutual Casualty Co. v. Johnson*, 584 S.W.2d 703 (Tex.1979); *Home Indemnity Co. v. Fuller*, 427 S.W.2d 97 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.); *Federal Insurance Co. v. Forristall*, 401 S.W.2d 285 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). Based on Valvoline's theory, the antifreeze was damaged during blending when the "seed" generated, at which time the antifreeze was in Plaintiff's care, custody or control.

■ Coverage is excluded under Exclusion "j(6)" of the Policy for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Policy, ¶ 2(j)(6). Exclusion "j(6)" applies to work that was incomplete at the time of the damage. The purpose of excluding coverage for an insured's incorrect work is to protect the insurer from "attempts to recover funds to correct deficiencies caused by the contractors' questionable performance." *T.C. Bateson Construction Co. v. Lumbermens Mutual Casualty Co.*, 784 S.W.2d 692, 695 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Justification for this type of exclusion is the belief that "the insured can control the quality of the ... services he supplies, while accidental injury to property or persons exposes him to almost limitless liability." *Id.*

The insured's "work" is defined under the Policy to include any work or operations performed by the insured. Policy, ¶ 15. The Court rejects Plaintiff's argument that it performed no work on the feedstock to convert it to antifreeze. The definition of "work" in the Policy is clearly broad enough to include the blending, packaging and distribution services provided by Plaintiff. Plaintiff's services are not removed from the Policy definition of "work" simply because they were performed according to its customer's proprietary procedure.

---

4. *See* for definition, *infra* at p. 600.

■ Coverage is excluded under ¶ 2(k) of the Policy for "property damage" to the insured's "product" "arising out of it or any part of it." Policy, ¶ 2(k). The insured's product is defined in the Policy to include goods or products distributed by the insured. Policy, ¶ 14.

Plaintiff argues the antifreeze was not its product,[5] but the Court concludes the antifreeze meets the Policy definition of the insured's product.

The legal authorities cited by the parties support this result. Plaintiff relies on *Gulf Mississippi Marine Corp. v. George Engine Company, Inc.*, 697 F.2d 668 (5th Cir.1983), a case in which the insured assembled certain vessels for a co-defendant that sold them to the plaintiff. Plaintiff thereafter asserted a claim for damages resulting from defects in the design, manufacture, and installation of the major components of the vessels. *Id.* at 669. The Fifth Circuit noted with approval the general purpose of "work product" exclusions, which is to exclude from the insurer's coverage any obligation of the insured to repair or replace the insured's own defective work or products. *Id.* at 670. The clauses are also intended to apply to a supplier's entire finished products. *Id.*

The Fifth Circuit distinguished, however, the specific situation before the Court in *Gulf Mississippi* in which the insured was sought to be held liable for defective component parts and not for damages that stem from the "product" itself. *Id.* at 671–72. In the case at bar, Valvoline alleges only that the completed antifreeze was defective, not that any of the component parts were contaminated·or otherwise defective. Indeed, it would be inconsistent for Valvoline to assert that the component feedstocks which it supplied were defective and for Plaintiff to be legally obligated to pay for the problem antifreeze.

Defendants, in contrast, rely on *Spring Vegetable Co. v. Hartford Casualty Insurance Co.*, 801 F.Supp. 385 (D.Or.1992), which involved a potato processing plant that acted as a commission merchant for potato growers.[6] *Id.* at 387. The insured in that case took possession of potatoes and processed them for shipment on behalf of the growers. Some of the potatoes developed a condition known as "soft rot" while they were in the possession of the insured. *Id.* at 388. The trial court concluded that the potatoes met the policy definition of the "insured's product" once they were removed from the farm and placed in the insured's possession. *Id.* at 393–94.

The *Gulf Mississippi* case is easily distinguishable while the *Spring Vegetable* case is almost directly on point. Unlike the complaining party in *Gulf Mississippi,* Valvoline apparently takes the position that the antifreeze as a completed product, not any of its component parts, was defective. As was the case in *Spring Vegetable,* title is not an element of the Policy definition of "insured's product." Because the antifreeze at issue meets the Policy definition of "insured's product," Exclusion "k" applies.

■ The Policy also excludes coverage for damages claimed for any loss, cost or expense incurred if the insured's product is withdrawn or recalled from the market by any party because of a "known or suspected defect." Policy, ¶ 2(n). The exclusion is called a "sistership" exclusion because it arose following an aircraft crash after which the airplane's "sister ships" were grounded and recalled to correct a common defect. *See Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 419 (5th Cir.), *cert. denied* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

**5.** Plaintiff concedes, however, that it distributes the antifreeze. Affidavit of Jeffrey H. Lippold, Exh. B to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment and Plaintiff's Cross Motion for Partial Summary Judgment [Doc. # 26].

**6.** The *Spring Vegetable* trial court distinguished situations in which the insured acted as a commission merchant (who sold goods on consignment or as a bailee), such as the case before it,

from those in which the insured purchased potatoes (*i.e.*, took title) directly from growers for resale. 801 F.Supp. at 387. Apparently, the potatoes at issue in *Spring Vegetable* remained the property of the growers. Similarly, the fact that title to the feedstock and resulting antifreeze remained in Valvoline does not preclude the material meeting the Policy definition of the insured's "product."

Plaintiff argues correctly that the "sistership" exclusion is not "intended to exclude from coverage damages ... arising from the malfunctioning of product where no 'sister' products are involved." *Gulf Mississippi*, 697 F.2d at 674, quoting *Todd Shipyards Corp.*, 674 F.2d at 419. However, this Exclusion applies to "product, work, or property" "withdrawn or recalled from the market or from use ... because of a known or suspected defect, deficiency, inadequacy or dangerous condition" (emphasis added). It is undisputed that Valvoline recalled all packages of product it suspected were from the same batch of Plaintiff's antifreeze as the packages containing the defective antifreeze because Valvoline suspected they would all be similarly defective. Thus, the Court concludes that Defendants have established that the damages alleged by Plaintiff arise from the expenses incurred as a result of the recall of other "sister" packages associated with the package of antifreeze that Valvoline asserted had a "suspected defect," and Exclusion 2(n) applies.

Plaintiff thus has failed to establish there is a genuine question of material fact as to any of Exclusions "j(4)," "j(6)," "k," or "n."

***Plaintiff's Arguments.***—Plaintiff argues that the property damage did not occur until the silicate fallout was experienced and discovered by Valvoline's customers, at which time the antifreeze was out of its care, custody or control. Plaintiff also argues that it performed the work properly and was in no manner negligent.

In support of its argument regarding the timing of the property damage to the antifreeze, Plaintiff cites *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Insurance Co.*, 852 S.W.2d 252 (Tex.App.—Dallas 1993, writ denied). In *Cullen/Frost*, the court held that the "time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed." *Id.* at 257, citing *Dorchester Development Corp. v.. Safeco Insurance Co.*, 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ).

Defendants correctly point out that *Dorchester* and *Cullen/Frost* relate to the time of an "occurrence," not the time of "property damage." "Property damage" for purposes of this case is, under the Policy, "deemed to *occur* at the time of the physical injury that caused it" (emphasis added). "Occurrence," under the Policy, is defined as "an accident, including ... exposure to ... general harmful conditions." The distinction appears to be one without a difference in this case. It could be argued that the product and its owner, Valvoline, were damaged when the "seed" was generated. The parties argue that the product had a "defect" from that time onward, albeit a latent defect.

On the other hand, Plaintiff argues that if the antifreeze was not damaged at the time the "seed" allegedly was created, but was instead damaged when the latent silicate fallout problem was discovered sometime after distribution of the packaged antifreeze, Exclusions "j(4)" and "j(6)" would not apply. The argument, however, fails to avoid an applicable Exclusion. Exclusion "1" excludes coverage for " '[p]roperty damage' to 'your work' arising out of it ... and included in the 'products-completed operations hazard.' " Policy, ¶ 2(*l*). "Products-completed operations hazard" is defined under the Policy to include property damage occurring away from the insured's premises and arising out of the insured's product or work except products still in the insured's possession or work that has not yet been completed. Policy, ¶ 11(a).

As discussed above with reference to Exclusion "j(6)," the blending operation performed by Plaintiff meets the Policy definition of the insured's "work." If, as argued by Plaintiff, the property damage did not occur until the silicate fallout problem was discovered, Exclusion "1" would apply to exclude coverage for the same reasons previously discussed.

Plaintiff also argues that Exclusions "j(6)" and "1" are inapplicable because there is no evidence the blending work performed by it was negligent or substandard. This proof, however, is not specifically required by Policy Exclusion "1."

More importantly, if Plaintiff's argument that it was not responsible for the property damage suffered by Valvoline, there

would be no legal obligation for Plaintiff to pay Valvoline for the antifreeze or to reimburse its recall expenses. Defendants are required under the Policy to pay only "those sums that the insured becomes legally obligated to pay as damages...." Policy, ¶ (1)(a). Plaintiff has failed to explain how it could have been "legally obligated to pay as damages" expenses incurred by Valvoline unless Plaintiff's performance was "incorrect,"—or negligent or substandard.

The Court notes, lastly, that Valvoline is one of Plaintiff's largest customers. It is understandable that Plaintiff would endeavor to maintain a positive relationship with its highly-valued customers. Sound business objectives, however, do not rise to the level of a legal obligation. Thus, Plaintiff's voluntary payment to Valvoline would not fall within the Policy's coverage provision, and Plaintiff has failed to establish under its own hypotheses that it is entitled to insurance coverage for the sums claimed.

***Related Tort Claims.***—It is undisputed that if there is no coverage, the related tort claims fail. *Republic Insurance Co. v. Stoker*, 903 S.W.2d 338 (Tex.1995). Indeed, Plaintiff filed no opposition to Defendants' Second Motion for Summary Judgment which raised the issue. Consequently, Defendants are entitled to summary judgment on the tort claims asserting a breach of the common law duty of good faith and fair dealing, a violation of Insurance Code § 21.21, and a violation of the DTPA.

### CONCLUSION

The Court has concluded that Exclusion "k", Exclusion "n," and either Exclusion "j(6)" or "l" applies to exclude coverage.[7] The Court has also concluded that, should Valvoline agree or should Plaintiff prove the defective antifreeze was the result of contaminated feedstocks and not the result of negligence on Hi–Port's part, the claim would not fall within insurance coverage at all. As a result, Defendants are entitled to summary judgment on their request for declaratory judgment and the breach of contract claim. Finally, absent coverage, there can be no

recovery under the related tort claims and Defendants are entitled to summary judgment on those claims as well. An appropriate final judgment consistent herewith shall be issued this day.

---

7. Exclusion "j(4)" also may apply, to the extent Valvoline's generation of the "seed" theory is credited with being the "occurrence" and the cause of the damage to the product.