[No. G017212. Fourth Dist., Div. Three. May 29, 1998.]

WILLIAM D. COLLETT, Plaintiff and Appellant, v.
INSURANCE COMPANY OF THE WEST, Defendant and Respondent.

## COUNSEL

Levine & Eriksen and Marc R. Levine for Plaintiff and Appellant.

Chapman & Glucksman, Dominic J. Fote, Arthur J. Chapman and Wendy M. Housman for Defendant and Respondent.

## OPINION

**WALLIN, J.**—William D. Collett, a masonry contractor doing business as Reflective Designs, built a series of retaining walls for Dividend Development in connection with a residential development in San Juan Capistrano. The retaining walls failed, and Collett agreed to remove and rebuild them, up to a cost of $125,000, as a settlement of claims against him by Dividend Development. Collett claimed its insurer, Insurance Company of the West (ICW), had agreed to indemnify him for these costs under the property damage provisions of his commercial general liability policy. When ICW refused to do so, Collett sued it for breach of contract and breach of the covenant of good faith and fair dealing.

In a bifurcated proceeding, the court tried the issue of coverage and found the claim fell under the work completed exclusion. Collett claims the court

erred because the inspector he hired failed to discover the defects in the wall. Collett asserts the inspector should be considered a "subcontractor," thus bringing his claim under an exception to the work completed exclusion. We disagree and affirm.

Collett contracted with Dividend in May 1988 to build retaining walls for a residential development in San Juan Capistrano. The contract specified the dimensions of the walls and footings, the placement of reinforcing steel bars, and the particular strength of the concrete grout. As required by the contract, Collett hired a special inspector, David Draper, to verify and report to the project structural engineer that the walls were being constructed according to the specifications. Draper did so, and the walls were completed in May of 1989.

In February 1990, Dividend notified Collett that parts of the walls had collapsed and other parts were damaged and in danger of collapse. An investigation revealed the walls failed because, at least in part, they were not built in accordance with the plans and specifications and in conformity with the building code. Dividend and Collett negotiated their respective responsibilities and agreed Collett would accept "a portion" of the responsibility and would spend up to $125,000 in demolition and reconstruction of the walls. Dividend agreed not to hold Collett responsible beyond $125,000 and to assist him in making a claim against ICW.[1]

The agreement between Dividend and Collett was documented in a letter from Collett to his attorney on September 14, 1990. In a letter to Collett dated September 24, Dividend outlined the problem, claiming the wall failures resulted in "lengthy delays in escrow closings plus the potential danger to several homes and homeowners." It was precluded from "pull[ing] permits" on the lots until the walls were rebuilt. It estimated the cost of removal and replacement to be $357,500, $140,000 of which was the estimated cost of rebuilding the walls. Collett presented this claim to ICW on September 26.

ICW's commercial general liability policy (CGL) covered Collett from March 1989 to March 1990. The insuring agreement provided it would "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . ." Under exclusion K (the product exclusion), the policy did not cover " 'property damage' to 'your product'

---

[1]The timing of the settlement is in dispute. ICW claims Collett and Dividend reached their agreement, and the remedial work was actually begun, long before Collett presented a claim to ICW, in September 1990. Collett claims the settlement was not finalized until October 1990. It appears, however, the trial court found the settlement took place before the claim was made.

arising out of it or any part of it." Under exclusion L (the work completed exclusion), it did not cover: " 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " The products-completed operations hazard includes all property damage arising out of "your product" or "your work" except work that has not yet been completed. Exclusion L did not apply (i.e., the property damage *was* covered) "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Based on these exclusions and others, ICW denied the claim.

The trial court found "none of the $125,000 in this case applies to loss-of-use, was not paid for loss of use, nor was the actual claim [presented] by Dividend for loss-of-use." It found the product exclusion "clearly applies" because comprehensive liability policies "are not intended to cover what you people have described as a warranty or performance claim. It is not the general intent of those policies to cover the insured . . . for damages for its own product." The trial court also found the work completed exclusion applied, and that the "subcontractor" exception did not apply to the work of an inspector. "I think the whole concept [of the exception] are situations where . . . the work was actually done by a subcontractor. [¶] Here, the only 'work' that was done by a so-called subcontractor was an inspection service. [¶] I think that just defeats the whole policy behind making people responsible for the cost of repair of their own product that causes 'damage' to themselves."

 █   Billing this issue as one of "national concern," Collett urges exclusion L (the work completed exclusion) does not apply because the inspector he hired was a subcontractor within the meaning of the exception. We disagree.

In the 1973 version of the standard form CGL, the work performed exclusion precluded coverage for " 'property damage to work performed by or *on behalf of* the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.' " (Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1997) ¶ 7:1443, p. 7E-11, original italics omitted, italics added.) The "on behalf of" language was interpreted to mean no coverage "whatsoever for damage to a subcontractor's work, or for damage to [the insured's] own work for damage resulting from a subcontractor's work." (*Maryland Casualty Co.* v. *Reeder* (1990) 221 Cal.App.3d 961, 972 [270 Cal.Rptr. 719].)

An insured under the 1973 CGL version could pay a higher premium and obtain a broad form property damage endorsement, which eliminated the "on

behalf of" language and excluded coverage only for " 'property damage to work performed by the named insured . . . .' " (Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra*, ¶ 7:1452, p. 7E-14.) This extended coverage to the insured's " 'completed work when the damage [arose] out of work performed by someone other than the named insured, such as a subcontractor.' " (*Maryland Casualty Co.* v. *Reeder, supra*, 221 Cal.App.3d at p. 972.)

In *Maryland Casualty*, condominium owners sued the insured developer and builder when, several years after completion of the project, they experienced significant damage caused by soil subsidence and roofing failures. The builder and developer were insured under a CGL policy with a broad form endorsement excluding coverage for "property damage to work performed by the named insured . . . ." The court found the endorsement, by omission, provided coverage for claims made against the insured arising out of work performed by the soils engineers, graders and roofing subcontractors. (221 Cal.App.3d at pp. 971-974.)

The broad form endorsement was also interpreted in *Insurance Co. of North America* v. *National American Ins. Co.* (1995) 37 Cal.App.4th 195 [43 Cal.Rptr.2d 518]. The insured, who had purchased a broad form endorsement with his CGL policy, was a roofing contractor on a condominium project. In the underlying action for damages attributable to roof failure, the roofing contractor was found liable to the developer under an indemnity agreement, but the jury apportioned the negligent cause among the roofing contractor and third parties. The court found the broad form endorsement excluded coverage "to the extent [the roofing contractor] damaged the roofs through its own negligence, but provid[ed] coverage to the extent [it] had liability for damage to the roofs caused by the negligence of third parties for whom [it] was derivatively liable." (*Id.* at p. 202.)

In 1986, the standard CGL form was revised, and the exception to the work performed exclusion in ICW's policy was added. Thus, the work completed exclusion did not apply " 'if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.' " (*Blackhawk Corp.* v. *Gotham Ins. Co.* (1997) 54 Cal.App.4th 1090, 1096 [63 Cal.Rptr.2d 413].)

Collett reviews the above history of the work completed exclusion and its subcontractor exception, equates the level of coverage under the exception to the level under the former broad form endorsement, and concludes that the word "subcontractor" in the exception refers to *anyone* who performs work on behalf of the insured. But this interpretation is directly contrary to the

plain language of the exception, which says " 'work . . . performed on your behalf *by a subcontractor.*' " (54 Cal.App.4th at p. 1096, italics added.)

Collett then urges the term *subcontractor* should be interpreted in its broadest sense so as to include the inspector hired by him, citing *National Union Fire Ins.* v. *Structural Sys. Tech.* (E.D.Mo. 1991) 756 F.Supp. 1232 in support. *National Union* involved a CGL policy with the 1986 form exception to the work performed exclusion, the same as ICW's policy before us. The insured contractor was the builder of a television broadcasting tower that collapsed, destroying the tower and all attached broadcasting equipment. The contractor claimed the damage was caused by the failure of the prefabricated steel components manufactured and supplied by a third party. The insurer contended it had no duty to defend the contractor, noting that " '[y]our work' " as defined in the work completed exclusion included " '[m]aterials, parts or equipment furnished in connection with such work . . . .' " (*Id.* at p. 1239.)

The court disagreed, finding the third party was a subcontractor so as to qualify as an exception to the exclusion. "Webster defines subcontract as 'a contract that assigns some of the obligations of a prior contract to another party,' and subcontractor as 'one that enters into a subcontract and assumes some of the obligations of the primary contractor.' Similarly, subcontractor also is defined as 'One who takes [a] portion of a contract from principal contractor or another subcontractor,' and 'One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance.' " (*National Union Fire Ins.* v. *Structural Sys. Tech.*, *supra*, 756 F.Supp. at p. 1239, fn. omitted.) Finding the third party was not a mere materialman, the court found it was a subcontractor of the steel rods, a major component of the tower. "According to the contract between [the contractor] and [the third party], the latter was to 'Provide, Fabricate, Galvanize & Deliver to the site all materials per' certain specifications." (*Id.* at p. 1240.)

The holding in *National Union* has been recognized as a broad interpretation of subcontractor. But even under this broad view, Collett's inspector does not fit. While the inspector may have failed to catch defects in the retaining walls, he did not put them there. Collett did.[2]

Furthermore, Collett seeks to recover costs he incurred in repairing and replacing the defective walls, not the settlement of third party claims. This is contrary to the intent of the CGL policies. "Generally liability policies . . . are not designed to provide contractors and developers with coverage against

---

[2]Collett does not claim his suppliers were negligent subcontractors under *National Union.*

claims their work is inferior or defective. [Citation.] The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. [Citations.] Rather[,] liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products." (*Maryland Casualty Co.* v. *Reeder*, *supra*, 221 Cal.App.3d at p. 967.)

Collett claims the trial court erroneously found the product exclusion applicable to bar coverage. Although it appears the product exclusion does not apply to construction defect cases (*Maryland Casualty Co.* v. *Reeder*, *supra*, 221 Cal.App.3d at p. 976), we need not reach this issue because coverage was properly denied under the work completed exclusion.

The judgment is affirmed. Respondent is entitled to costs on appeal.

Sills, P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied June 29, 1998.