**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0481n.06

**No. 09-4449**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 14, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MOSSER CONSTRUCTION, INC., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| THE TRAVELERS INDEMNITY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant - Appellee. | ) | |
| _____ | ) | |

Before: **MERRITT, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** In this diversity suit, Plaintiff Mosser Construction, Inc. ("Mosser") alleges that its insurer, Defendant, The Travelers Indemnity Company ("Travelers"), wrongfully declined to defend and indemnify Mosser against an underlying claim brought against Mosser by the City of Port Clinton, Ohio ("Port Clinton"). The district court granted summary judgment to Travelers after finding that the relevant term in the insurance contract between the parties had a plain meaning that absolved Travelers of the obligations to defend and indemnify Mosser in the underlying action. We reverse.

**I**

Mosser is a construction firm based in Fremont, Ohio. Travelers issued Mosser three consecutive commercial general liability ("CGL") insurance policies from 2005 to 2008. The insurance policy in effect at the times relevant to this suit established a general obligation of

No. 09-4449
*Mosser Construction, Inc. v. The Travelers Indemnity Co.*

Travelers to defend Mosser against suits seeking damages for property damage caused by Mosser. The policy contained the following exclusion from coverage, known as the "your-work exclusion." The second sentence of the exclusion provides an exception to the exclusion known as the "subcontractor exception":

> **Exclusions**
>
> This insurance does not apply to: . . .
>
> **l. Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The your-work exclusion thus bars coverage for damage to "your work" (e.g. a structure constructed by Mosser) after work on it has been "completed or abandoned."[1] The exception to the exclusion provides that Travelers will still provide coverage to damage to "your work" if the work was performed by a subcontractor. Unlike the other relevant terms in the policy, "subcontractor" is not defined. This suit concerns the meaning of "subcontractor."

---

[1] The insurance policy defines "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property. . . . or b. Loss of use of tangible property that is not physically injured." The term "your work" means "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." The clause referring to the "products-completed operations hazard" has the effect of preserving insurance coverage for property damage to Mosser's work while construction is still ongoing.

No. 09-4449
*Mosser Construction, Inc. v. The Travelers Indemnity Co.*

On July 29, 2002, Mosser entered into a construction contract with Port Clinton to make improvements to Port Clinton's waste-water treatment facility. Mosser was the general contractor for the project. The contract required Mosser to "furnish all labor, materials, supplies, equipment and other facilities and things necessary or proper or incidental to complete performances of the work under [the] Contract." That work included placing structural backfill beneath and around the foundation of a new odor-control building. The contract required that the backfill meet the size and grading requirements for AASHTO #57 coarse aggregate.[2]

Mosser contracted with Gerken Materials, Inc. ("Gerken") for the purchase of the specified structural backfill. The only contract between Mosser and Gerken is a standard two-page purchase order that specifies that Gerken will sell to Mosser several grades of crushed limestone, including "#57 Stone @ $5.00/Ton." The purchase order notes that the stone is being obtained for use in the Port Clinton waste-water treatment plant, but does not otherwise refer to terms from Mosser's master contract with Port Clinton.

The #57 aggregate was a standard inventory item that Gerken regularly produced by crushing quarried limestone, and it regularly stocked the aggregate at its facility in Port Clinton. Gerken conducts standard quality control testing on all of the crushed stone it produces, but did not perform any special or additional testing on the backfill purchased by Mosser. Gerken did not deliver the stone to the construction site; Mosser picked up the backfill, trucked it to the site, and completed the

_____

[2]The American Association of State Highway and Transportation Officials (AASHTO) sets standard specifications for the production of coarse aggregate.

3

on-site work itself. Gerken's invoices for the stone total $31,148.87, representing approximately 0.5% of the total master-contract price of $6.8 million.

Mosser substantially completed the Port Clinton project by December 31, 2004. After construction was complete, however, the walls of the new odor-control building began to crack. Port Clinton's investigation indicated that the cracking was due to failure of the structural backfill beneath and around the foundation of the building. Port Clinton alleged that the backfill material was defective because it contained gypsum that leached out of the material when exposed to groundwater, causing improper settling. Port Clinton alleged that in addition to the odor-control building, a 42-inch effluent line and a pressurized grit line placed in the backfill were also damaged due to the defective fill material. Port Clinton notified Mosser about these problems. Mosser then notified Travelers of the property damage via a notice of claim letter on June 28, 2007. Travelers denied Mosser coverage on November 6, 2007. Port Clinton filed suit against Mosser on December 26, 2007, seeking damages for property damage resulting from breach of contract. Mosser sent a copy of Port Clinton's complaint to Travelers, but Travelers again denied coverage on January 16, 2008.

Mosser filed suit against Travelers in Ohio state court in September 2008, seeking a declaratory judgment that Travelers had duties to defend and indemnify Mosser in the underlying action, and damages for breach of contract and bad faith. Travelers removed the action to the United States District Court for the Northern District of Ohio in October 2008, and the parties filed cross-motions for summary judgment. Travelers argued that Gerken was not a subcontractor and thus any damage caused by defective backfill it produced is not covered under the insurance policy because

of the your-work exclusion. Mosser argued that Gerken was a subcontractor, and thus the subcontractor exception to the your-work exclusion preserved coverage. The district court granted Travelers' motion for summary judgment and denied Mosser's motion. It held that the meaning of "subcontractor" in the insurance agreement is unambiguous, and that Gerken was not a subcontractor under that definition.

## II

### A. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Cady v. Arenac Cnty.*, 574 F.3d 334, 339 (6th Cir. 2009). We uphold summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, we must draw all reasonable inferences and view all evidence in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Am. Express Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011).

### B. THE SUBCONTRACTOR EXCEPTION

This case requires that we interpret the term "subcontractor" as used in the subcontractor exception to the your-work exclusion in the insurance agreement, and to determine whether Gerken falls within that term under the circumstances presented.

Because this is a diversity case, we apply Ohio law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). Ohio courts have "consistently held that insurance contracts must be construed in accordance with

the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1102 (Ohio 1992). Thus, "if the language of the policy's provisions is clear and unambiguous, this court may not 'resort to construction of that language.'" *Id.* (quoting *Karabin v. State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984)). A contract term is unambiguous if it has a "plain and ordinary meaning." *Karabin*, 462 N.E.2d at 406.

If the meaning of a term is ambiguous, however, then that ambiguity should be "interpreted strictly against the drafter and in favor of the nondrafting party." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003). "Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." *Id.* "[S]ince insurance policies are interpreted strictly against the insurer, '[i]t will not suffice for [the insurer] to demonstrate that its interpretation is more reasonable than the policyholder's.'" *Andersen v. Highland House Co.*, 757 N.E.2d 329, 333 (Ohio 2001) (citation omitted) (second alteration in original). The insurer, "having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured." *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982).

Exclusions in insurance policies are construed narrowly such that "that which is not clearly excluded from the operation of the contract is included in the operation thereof." *Southside River-Rail Terminal, Inc. v. Crum & Forster Underwriters of Ohio*, 811 N.E.2d 150, 154 (Ohio Ct. App. 2004) (quoting *Home Indemn. Co. of New York v. Plymouth*, 64 N.E.2d 248, 248 (Ohio 1945) (paragraph two of the syllabus)). The burden is on the insurer to show that an exclusion specifically applies. *Neal-Pettit v. Lahman*, 928 N.E.2d 421, 424 (Ohio 2010). "[O]nce the insurer establishes

6

that an exclusion is applicable, the burden shifts back to the insured to establish the applicability of an exception to the exclusion." *Goodrich Corp. v. Commercial Union Ins. Co.*, 2008 WL 2581579, at *23 (Ohio Ct. App. June 30, 2008). If a term in an exception to an exclusion is unambiguous, and if "the context in which it is employed does not indicate that it should be given any other meaning," then we must give that term its plain meaning. *Hybud Equip.*, 597 N.E.2d at 1102. If a term is ambiguous, however, then, as with terms in the main body of the contract, it must be construed broadly in favor of the insured and against the insurer. *See Cincinnati Ins. Co. v. G.L.H., Inc.*, 2008 WL 2940663, *7 (Ohio Ct. App. Aug. 1, 2008) (unpublished); *see also TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 145 P.3d 472, 477 (Cal. 2006); *St. Paul Fire & Marine Ins. Co. v. Lefton Iron & Metal Co., Inc.*, 694 N.E.2d 1049, 1057 (Ill. App. Ct. 1998); *Rufener v. State Farm Fire & Cas. Co.* 585 N.W.2d 696, 699 (Wis. Ct. App. 1998); *Hughes v. State Farm Fire & Cas. Co.*, 2007 WL 2874849, at *4 (W.D. Pa. Sept. 27, 2007).

The your-work exclusion and the subcontractor exception are standard insurance contract terms that are used widely in the industry. *See* 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 129:18 (3d ed. 2010) (available on Westlaw) (hereinafter "Couch on Insurance"). Neither the insurance agreement between Travelers and Mosser nor the commonly-used standard commercial general liability policy on which it is based define "subcontractor." Further, no Ohio court has defined the term "subcontractor" in this context.

Dictionary definitions of "subcontractor" provide limited guidance. Older editions of Black's Law Dictionary define "subcontractor" as

> One who takes portion of a contract from principal contractor or another subcontractor. One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance. One who takes from the principal or prime contractor a specific part of the work undertaken by the principal contractor.

Black's Law Dictionary (6th ed. 1990). Newer editions provide a similar definition: "One who is awarded a portion of an existing contract by a contractor, esp. a general contractor. • For example, a contractor who builds houses typically retains subcontractors to perform specialty work such as installing plumbing, laying carpet, making cabinetry, and landscaping . . . ." Black's Law Dictionary (9th ed. 2009). Webster's Third New International Dictionary defines "subcontractor" as "an individual or business firm that contracts to perform part or all of another's contract." Webster's Third New International Dictionary (Unabridged) (2002); *see also* American Heritage Dictionary of the English Language (available at http://education.yahoo.com/reference/dictionary/-entry/subcontractor) ("One that enters into a subcontract and assumes some of the obligations of the primary contractor."). These definitions are broad, and could be read to encompass a material supplier like Gerken because, read literally, Gerken contracted (via the backfill purchase order) to take a portion of Mosser's general contract, the obligation to provide backfill.

The parties urge us to define "subcontractor" with reference to cases interpreting the Miller Act, 40 U.S.C. § 3131, which "requires a prime contractor of a federal project to furnish a payment bond to insure payment to individuals who supply labor and/or materials for federal projects." *United States for the Use and Benefit of Consol. Pipe & Supply Co. v. Morrison-Knudson Co.*, 687 F.2d 129, 131 (6th Cir. 1982). Under the Miller Act, "the payment bond protects only those persons who have a contractual agreement with a prime contractor or subcontractor engaged in a federal

project. Persons supplying labor or material to a mere materialman are not protected." *United States*

*for the Use and Benefit of Conveyor Rental & Sales Co. v. Aetna Cas. & Surety Co.*, 981 F.2d 448,

450 (9th Cir. 1992) (citation omitted). Therefore, in Miller Act cases, courts frequently must decide

whether an entity is a subcontractor or merely a material supplier under the Act. In *Clifford F.*

*MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co.*, 322 U.S. 102 (1944), the

Supreme Court held that under the Miller Act "a subcontractor is one who performs for and takes

from the prime contractor a specific part of the labor or material requirements of the original

contract, thus excluding ordinary laborers and materialmen." *Id.* at 109. Subsequent cases have held

that subcontractor status is determined by the "substantiality and importance of [the purported

subcontractor's] relationship with the prime contractor." *F.D. Rich Co. v. United States for the Use*

*of Indus. Lumber Co.*, 417 U.S. 116, 123 (1974). Courts have looked to multiple factors in making

this determination, including whether "the product supplied is custom fabricated," whether "the

supplier is required to perform on site," and whether or not the materials supplied come from

existing inventory. *Conveyor Rental & Sales*, 981 F.2d at 451-52 (listing 18 factors and citing cases

applying them). Under the general definition advanced in *MacEvoy*, Gerken could be a

subcontractor because it performed and took from Mosser "a specific part of the . . . material

requirements of the original contract." Gerken might not be considered a contractor under *Conveyor*

*Rental* and similar cases, as it performed no on-site work and supplied the backfill from existing

inventory.

The parties also debate the significance of *J.T Weybrecht's Sons Co. v. Hartford Accident*

*& Indemnity Co.*, 119 N.E.2d 836 (Ohio 1954). There, the Ohio Supreme Court interpreted the term

"subcontractor" as used in a state statute governing contractors' performance-bond requirements. The court held that "[t]he ordinary meaning of the word 'subcontractor' will include such a materialman who contracts to furnish material to a contractor for use in performing his contract." *Id.* at 839. Thus, "the word 'subcontractor' as used in [the statute] should be given its ordinary meaning, so that it may include one who contracts with the general contractor for performance of part of the work to be performed under the general contract, even though the part contracted for involves only the furnishing of material." *Id.* at 842. Under this definition, Gerken would qualify as a subcontractor.

Although the Miller Act cases and *Weybrecht's* are instructive, they are not controlling because they interpret "subcontractor" in contexts different from that at issue here. No Ohio court has discussed the meaning of "subcontractor" in the your-work exclusion, but several courts applying the law of other states have done so. They have all concluded that material suppliers can be subcontractors, but that some combination of fabrication to custom specifications or on-site work is required.

In *Wanzek Construction, Inc. v. Employers Insurance of Wasau*, 679 N.W.2d 322, 329 (Minn. 2004), the Supreme Court of Minnesota concluded that the term "subcontractor" was ambiguous because it was not defined in the policy or by statute or regulation. The court construed the ambiguity in favor of the insured and held that "where, as here, a supplier custom fabricates the materials to the owner's specifications and provides on-site services in connection with the installation, the supplier meets the definition of subcontractor under the exception to the 'your works' exclusion." *Id.* Similarly, in *National Union Fire Insurance Co. v. Structural Systems*

10

*Technology, Inc.*, 756 F. Supp. 1232 (E.D. Mo. 1991), *amended by* 764 F. Supp. 145 (E.D. Mo. 1991), a district court interpreting Missouri law concluded that the supplier of steel rods for construction of a radio tower was a subcontractor and not "merely a materialman" because it fabricated the rods according to the specific design and manufacturing specifications and delivered them to the site. *Id.* at 1240. The Eighth Circuit affirmed the district court's decision. *Nat'l Union Fire Ins. Co. v. Structural Sys. Tech., Inc.*, 964 F.3d 759, 763 (8th Cir. 1992). The Fourth Circuit, interpreting Pennsylvania law, has cited *National Union* approvingly and held that a supplier that "custom manufactured . . . steam pipe in accordance with the shop drawings and project specifications, and [that] provided on-site installation instructions" was a subcontractor. *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 364-65 (4th Cir. 2005). The court further held that the term "subcontractor" was ambiguous and that it must therefore be construed in favor of the insured to preserve coverage. *Id.* at 365. Other courts agree that material suppliers that perform on-site work or manufacture materials to custom specifications fit within the definition of subcontractor. *See CGU/Hawkeye Sec. Ins. Co. v. Oasis Las Vegas Motor Coach Park, L.P.*, 65 F. App'x 182, 183-84 (9th Cir. May 22, 2003) (unpublished) (interpreting Nevada law); *Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 650-51 (S.D. Tex. 2010) (interpreting Texas law) ("Courts holding a supplier of building materials a 'subcontractor' for the purposes of the 'your work' exception typically do so on the basis of custom fabrication combined with an on-site presence.").

These cases provide guidance as to what entities do qualify as subcontractors, but there are few useful examples of cases identifying entities that are *not* subcontractors within the meaning of the subcontractor exception. *See CGU/Hawkeye*, 65 F. App'x at 184 (Graber, J., dissenting)

11

(offering dissenting view that "supplier and deliverer" of concrete was not a subcontractor, but merely a materialman); *Collett v. Ins. Co. of the W.*, 75 Cal. Rptr. 2d 165, 169-70 (Cal. Ct. App. 1998) (holding that a building inspector hired by masonry contractor was not a "subcontractor," even under the broadest definition of that term); *see also Bldg. Specialties*, 712 F. Supp. 2d at 651 ("The record is inadequate to permit this court to find that [the insulation supplier] is, or is not, a subcontractor as a matter of law."); *Web Constr. Inc. v. Cincinnati Ins. Co.*, 2007 WL 4230751, at *8 (D. Minn. Nov. 29, 2007) (holding that issues of material fact exist as to whether concrete supplier provided standard-mix or custom-fabricated concrete and whether it performed significant on-site work for purposes of qualifying as subcontractor). Thus, cases construing the subcontractor exception leave considerable uncertainty regarding where exactly to draw the line between subcontractors and mere material suppliers.

Relevant cases require something more than mere supply of standard inventory items. Secondary sources agree. Couch on Insurance states that "[a] manufacturer or supplier will . . . typically only constitute a subcontractor for purposes of the exception where the manufacturer or supplier custom fabricates the materials to the owner's specifications or otherwise performs part of the on-site construction work which the insured had contracted to perform." 9A Couch on Insurance § 129:18. Similarly, Bruner and O'Connor on Construction Law states that "[a] supplier that fabricates or otherwise provides unique materials should have little difficulty meeting the requirement of being a subcontractor." 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law § 11:105 (2010) (available on Westlaw). Further,

> [s]uppliers, regardless of whether they provide labor on site, that perform their services pursuant to the terms and conditions of the general contractor's agreement are, in all material respects, "subcontractors." While a bit more attenuated, a supplier that furnishes standard or "off-the-shelf" goods but does so pursuant to an agreement incorporating the terms and conditions of the owner/general contractor agreement should be deemed a "subcontractor." A supplier that simply sells goods to a general contractor on an open account is not "taking" under the general contractor's agreement with the owner and, therefore, is not a subcontractor.

*Id.*[3]

Based on the foregoing, in the context of this case the term "subcontractor" as used in the your-work exclusion is ambiguous. Competing definitions of subcontractor from other contexts, including dictionaries, the Miller Act cases, and *Weybrecht's*, establish that there are multiple reasonable interpretations of the term. The handful of cases defining the term in the context of the your-work exclusion also find ambiguity. Because the term is ambiguous, we must construe it strictly against Travelers and in favor of Mosser. *Westfield Ins.*, 797 N.E.2d at 1262. This means that Travelers must "be prepared to accept any reasonable interpretation, consistent with the [policy], in favor of the insured." *Gomolka*, 436 N.E.2d at 1348. Although this standard favors Mosser, we must still construe the term to determine whether Mosser's interpretation is reasonable. Although Mosser's interpretation need not be the *most* reasonable one, *Andersen*, 757 N.E.2d at 333, it cannot

---

[3]Although some secondary sources provide more general definitions of subcontractor that could encompass any and all material suppliers, those sources provide little discussion and uniformly cite cases that require some combination of custom fabrication or on-site work. *See* 3 New Appleman on Insurance, Law Library Ed. § 18.03[12][d] (Jeffrey E. Thomas & Francis J. Mootz, III eds., 2010) (citing *Nat'l Union*, 964 F.2d at 759); 3 Allan D. Windt, Insurance Claims & Disputes § 11:10 (5th ed. 2010) (citing *Limbach*, 396 F.3d at 364-65).

be a meaning that the words of the contract will not bear. *Brannon v. Troutman*, 598 N.E.2d 1333, 1336 (Ohio Ct. App. 1992) (citing *Ohio Crane Co. v. Hicks*, 143 N.E. 388, 389 (Ohio 1924)).

At oral argument, Mosser proposed that any material supplier, even a hardware store selling standard-inventory nails, would qualify as a subcontractor. Mosser's interpretation, that *any* materials supplier is a subcontractor, is not reasonable. Although the meaning of the term is ambiguous, its meaning is not as broad as Mosser urges. For a material supplier who does not perform work at the site to be a subcontractor, the supplier must manufacture the material according to specifications supplied by the general contractor, and, its materials contract with the general contractor must explicitly incorporate terms from the master contract or otherwise explicitly indicate that the materials at issue are manufactured or supplied specifically for the master contract's project.[4]

Gerken qualifies as a subcontractor under the above definition. Gerken manufactured the #57 coarse aggregate at its own facility using its own equipment. It did not purchase the aggregate from another supplier like a hardware store would with off-the-shelf nails. The only reason Gerken already stocked the correct grade of crushed stone on its property, and thus did not need to custom fabricate it to order for Mosser for use in the Port Clinton project, is that the AASHTO sets industry-wide standards for the production of coarse aggregate, and most or all purchasers will seek a grade of aggregate consistent with an AASHTO standard specifications. Moreover, the purchase order

---

[4]We find the cases from other jurisdictions interpreting the your-work exclusion to be persuasive on this point. Ohio courts will look to judicial decisions from other jurisdictions to construe terms in standard Commercial General Liability policies when there are no Ohio decisions on point. *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, No. 1-08-17, 2008 WL 4378153, at *6 n.6 (Ohio Ct. App. Sept. 29, 2008) (unpublished).

explicitly identifies Mosser's Port Clinton project — the subject-matter of the master contract — as

the "Job" for which Gerken supplied the aggregate at issue. Although Gerken may have produced

all or part of the backfill before entering into the purchase order with Mosser, the circumstances of

this case are enough to nudge Gerken over the line separating mere material suppliers from

subcontractors. Construing ambiguities in the contract in favor of Mosser, we conclude that Gerken

was a subcontractor for purposes of the Travelers insurance policy.

Therefore, we reverse the judgment of the district court granting summary judgment to

Travelers.

## C. TRAVELERS'S DUTY TO DEFEND

Based on our above holding that Gerken is a subcontractor, Travelers has a duty to defend

against the underlying Port Clinton suit. The standard governing when an insurer has a duty to

defend the insured against suit has been clearly described by Ohio courts:

> An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, [59 N.E.2d 199 (1945)], paragraph one of the syllabus; *W. Lyman Case & Co. v. Natl. City Corp.*, [667 N.E.2d 978, 979 (1996)]. The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. *Motorists Mut. Ins. Co. v. Trainor*, [294 N.E.2d 874 (1973)], paragraph two of the syllabus. The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. *Willoughby Hills v. Cincinnati Ins. Co.*, [459 N.E.2d 555, 557 (1984)]. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage. *Preferred Risk Ins. Co. v. Gill*, [507 N.E.2d 1118, 1123 (1987)].

*Ohio Gov't Risk Mgmt. Plan v. Harrison*, 874 N.E.2d 1155, 1159-60 (Ohio 2007). Further, "the duty

to defend need not arise solely from the allegations in the complaint but may arise at a point

subsequent to the filing of the complaint." *Willoughby Hills*, 459 N.E.2d at 557. The complaint in the underlying Port Clinton suit alleges facts sufficient to implicate Travelers' duty to defend against claims that the backfill produced and supplied by Gerken caused damage to the waste water treatment plant facilities.

### III

For the foregoing reasons, we REVERSE the judgment of the district court granting summary judgment to Travelers.